507 So.2d 50 (1987)
Albert Leroy WILLIAMS
v.
STATE of Mississippi.
No. 57307.
Supreme Court of Mississippi.
April 8, 1987.
Rehearing Denied June 3, 1987.
*51 Laurie S. Caldwell, Gulfport, for appellant.
Edwin Lloyd Pittman, Atty. Gen., by Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and ROBERTSON and GRIFFIN, JJ.
ROBERTSON, Justice, for the Court:

I.
We are concerned today with allegations of racially motivated peremptory challenges by a prosecutor in a criminal trial, recognizing that our course must be recharted in the wake of Batson v. Kentucky, 476 U.S. ___, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and Griffith v. Kentucky, 479 U.S. ___, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).
In the context of today's record, where the defendant has made a prima facie showing of constitutionally impermissible exclusion in a pre-Batson but not yet final case, the matter must be remanded to the Circuit Court with instructions that a hearing be held in accordance with Batson and our discussion which follows.

II.
Albert Leroy Williams, Defendant below and Appellant here, is a black person. On January 16, 1986, he was convicted in the Circuit Court of Harrison County of the armed nighttime burglary of the home of Mr. and Mrs. Benjamin Simpson. The record contains the testimony of both of the Simpsons that Williams was indeed the man who appeared in their living room (having entered through a bedroom window), held a knife to Mr. Simpson's stomach and stole some money from Mrs. Simpson's purse. Because of the nature of the action we take today, further details of the offense are not needed. Suffice it to say that the evidence appears such that Williams was not entitled to acquittal as a matter of law.
Our focus factually is upon the jury selection process. The record reflects that six black persons were on the original venire from which the jury was selected. One was removed by the court. Following voir dire examination, the prosecuting attorney exercised all six of his peremptory challenges.[1] Five of those challenges were used to strike the remaining five black veniremen. At that point, as the panel was tendered to him and before he exercised any peremptory challenges, Williams' counsel moved to quash the jury panel, citing the fact that the prosecution had exercised five of its six peremptory strikes to exclude black persons from the jury, and arguing that this action had the effect of "exclud[ing] every possible black juror in this panel."
*52 The record establishes that the prosecution did indeed use its peremptory strikes in a manner resulting in the removal of all black persons from the jury panel. The prosecuting attorney denied that these strikes were motivated by considerations of race but made no specific explanation of the basis of his challenges. On the basis of then existing law requiring as prima facie evidence of a violation of Williams' rights in the premises a showing of the prosecution's continuous and systematic use of peremptory challenges to exclude racial minorities in case after case, the Circuit Court denied the motion. See Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). Thereafter, Williams was found guilty and sentenced to a term of twenty years imprisonment.
The defense timely filed a motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial, the latter of which reasserted Williams' challenge to the prosecution's racially discriminatory use of its peremptory challenges. During a hearing on this issue, defense counsel testified to his observation concerning the racial composition of other criminal juries selected in Harrison County and urged the Circuit Court to require the prosecutor to state a reason into the record for his strikes on black persons. The motion for new trial was denied, again on the basis of Swain, supra. This appeal has followed.

III.
Williams' only assignment of error is the Circuit Court's overruling of his motion for a new trial[2] which, of course, served to renew his motion to quash the jury panel, both made below on grounds of the prosecution's constitutionally impermissible use of peremptory challenges to strike black persons from the jury. Williams cites Batson and argues that he made a prima facie showing of the discriminatory use of peremptory challenges against black jurors, a showing we are told was not rebutted with racially neutral explanations of the prosecutor's actions.
Decided on April 30, 1986, Batson significantly altered the substantive contours of, and the procedural ground rules for, the establishment of a claim of constitutionally impermissible exclusion of black jurors via use of peremptory challenges. Batson holds that a state criminal defendant establishes a prima facie case of such a violation on a showing (1) that he is a member of a "cognizable racial group," (2) that the prosecutor has exercised peremptory challenges toward the elimination of veniremen of the defendant's race and (3) that attendant facts and circumstances infer that these challenges were made for the purpose of striking minorities from the jury. ___ U.S. ___, 106 S.Ct. at 1722-23, 90 L.Ed.2d at 87. The defendant mounting such a challenge "is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits `those to discriminate who are of mind to discriminate.'" Id, citing Avery v. Georgia, 345 U.S. 559, 562, 73 S.Ct. 891, 97 L.Ed.2d 1244 (1953).
Once the accused has made a prima facie case of intentional discriminatory use of one or more of the prosecution's peremptory challenges, the burden shifts to the prosecution to come forward with a racially neutral explanation for each of the challenges. Such an explanation "need not rise to the level of justifying exercise of a challenge for cause," ___ U.S. at ___, 106 S.Ct. at 1723, 90 L.Ed.2d at 88, but may not include the prosecutor's "assumption  or his intuitive judgment  that they [black jurors] would be partial to the defendant because of their shared race." ___ U.S. at ___, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. The racially neutral reason the prosecutor must articulate must be "related to the particular case to be tried." ___ U.S. at ___, 106 S.Ct. at 1723, 90 L.Ed.2d at 88.
In the proceedings below, once defense counsel raised the exclusion point, the prosecuting attorney responded
The State denies systematically excluding blacks in this trial from that jury panel and the record should also reflect *53 the State used a peremptory challenge on an individual male who was white.
This response, to be sure, is quite inadequate under Batson, but we do not condemn it out of hand as it was given on January 15, 1986. Batson was not decided until April 30, 1986, to the considerable surprise of more than a few careful observers.
Today's problem is procedural. It arises in the wake of Griffith, which held Batson retroactively applicable to those cases which were "pending on direct ... review or not yet final" at Batson's April 30, 1986, birth. ___ U.S. at ___, 107 S.Ct. at 710, 715, 93 L.Ed.2d at 654, 661. A case is "final" according to Griffith where the judgment of conviction has been rendered, the availability of direct appeal exhausted, and the time for the filing of a petition for certiorari in the Supreme Court of the United States has elapsed or such petition has been finally denied. Griffith, 93 L.Ed.2d at 657 n. 6; Allen v. Hardy, 476 U.S. ___, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986). Such retroactivity is mandated because in relevant respects Griffith's case was like Batson's (and Williams' case is like Griffith's and Batson's) and like cases must be treated alike. ___ U.S. at ___, 107 S.Ct. at 715, 93 L.Ed.2d at 661.
Griffith mandates the availability of Batson rights and procedure to today's Appellant, Albert Leroy Williams, whose appeal was perfected some two months prior to Batson and, per force, his conviction had not become final when Batson was decided, nor is it final yet.[3] As explained above, Williams made out a prima facie case of illicit jury strikes, sufficient under Batson to require the prosecution to come forward with racially neutral reasons for the exercise of each of its peremptory strikes.
We have considered whether we should reverse outright by reason of the prosecution's Batson-inadequate response. On January 15, 1986, when that response was made, Batson had not been decided and quite reasonably the prosecutor had no way of knowing what showing was required of him. For all he knew this case would be reviewed on appeal under the now defunct but then extant Swain standard.[4] We do not consider that sending the case back so that the prosecuting attorney might have the opportunity to explain his peremptory challenges would be giving the prosecution an unfair second bite at the apple, for on January 15, 1986, he had no way of knowing the Batson apple would have to be bit. Put otherwise, the prosecution may not fairly be said to have waived the opportunity to do that which it had no reason to know it was obligated to do.
Applying Batson retroactively, Williams' prima facie showing made below shifted to the prosecution the burden of going forward. Elementary notions of fairness to the State's prosecution interest require that such an opportunity now be afforded, albeit at this late date, though we recognize the difficulties obviously attendant upon an active trial attorney's remembering with any degree of reliability the reasons for each of five peremptory challenges he made back in January of 1986. Such is the procedurally and practically awkward price we pay for maintenance of the fiction that Batson was an adjudication, in no part legislation.
Consideration of the merits of the present appeal should be and are held in abeyance. This case should be remanded to the Circuit Court with instructions that the district attorney be given an opportunity to come forward with neutral, non-race based Batson-conforming explanations for each of the peremptory strikes he used on black persons. Williams, of course, may be afforded the opportunity to challenge and rebut any such explanations. Should the Circuit Court thereafter find purposeful *54 discrimination, it should then and there order a new trial. On the other hand, should no impermissible discrimination be found, a return shall be filed with this Court containing the evidence at the hearing and as well the Circuit Court's findings of fact regarding each black juror peremptorily challenged. See Batson, ___ U.S. at ___, n. 21, 106 S.Ct. at 1724 n. 21, 90 L.Ed.2d at 88-89 n. 21. Under such a procedure, this Court will be best equipped at the proper time to conduct a meaningful and informed analysis of the jury's selection and the grounds underlying the prosecutor's strikes. Rule 37(b), Miss.Sup.Ct. Rules.
CONVICTION AND SENTENCE REMANDED WITH INSTRUCTIONS.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] In a non-capital criminal case, the prosecution and the defense may each challenge peremptorily as many as six prospective jurors. See Rule 5.06, Miss.Unif.Crim.R.Cir.Ct.Prac.
[2] See Rule 5.16(1), Miss.Unif.Crim.R.Cir.Ct.Prac.
[3] This case is wholly distinguishable from Irving v. State, 498 So.2d 305, 318 (Miss. 1986), as the defense in Irving in no way, shape, form or fashion raised the point at any stage of the trial proceedings. Moreover, Irving was decided before we had the benefit of the gospel according to Griffith.
[4] See, e.g., Caldwell v. State, 481 So.2d 850, 851 (Miss. 1985); Johnson v. State, 476 So.2d 1195, 1206 (Miss. 1985); Mason v. State, 440 So.2d 318, 319-20 (Miss. 1983), for just a few examples of how firmly entrenched we thought Swain was prior to May of 1980.