529 So.2d 630 (1988)
Rickey CHISOLM
v.
STATE of Mississippi.
No. 57826.
Supreme Court of Mississippi.
July 20, 1988.
*631 Robert M. Logan, Jr., Gerald, Brand, Watters, Cox & Hemleben, Newton, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by George W. Neville, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PRATHER, ROBERTSON and ZUCCARO, JJ.
ROBERTSON, Justice, for the Court:

I.
This case of armed robbery in rural east central Mississippi presents questions regarding the fairness of the jury selection process and the admissibility of the defendant's confession. In addition to its federal constitutional dimension, each of these questions as well contains a significant factual component. Upon careful review, we conclude that we have no authority but to affirm.

II.
Rickey Chisolm is a thirty-one-year-old black male longtime resident of Scott County possessed of a fifth grade education and saddled with functional illiteracy. Chisolm was the Defendant below and is the Appellant here. Verner Lee Gatewood, the victim, is a seventy-year-old white male who operates a country store in the Lillian Community of Scott County where he also lives.
On October 8, 1984, Gatewood was robbed at gunpoint by two masked individuals in the driveway of his home. At the time of the robbery Gatewood was carrying a cigar box with some $2,000.00 in cash and a number of checks and charge card receipts. Upon seeing the two masked individuals, Gatewood reached for the pistol he was carrying but had trouble removing it from the holster.[1] The gunman nearest to Gatewood immediately shot Gatewood striking him in the hand and chest. Nonetheless, Gatewood struggled with the gunman, *632 managing to remove his mask, until the other masked individual struck him with a shock absorber and rendered him unconscious. Upon regaining consciousness, Gatewood discovered that the cigar box and its contents were gone.
Later that evening, Deputy Sheriff Colon Anding, Scott County Sheriff's Department, investigated the scene and the incident. Anding discovered and followed a trail of footprints, two separate sets, and articles of clothing, a bloody glove and another mask, through a field behind Gatewood's home.[2] The footprints led to a house occupied by the McClendon family. Billy Ray McClendon advised Deputy Anding that Rickey Chisolm and Larry Carbins were there earlier in the evening looking for a ride to Morton.
Rickey Chisolm was formally charged with armed robbery in an indictment returned by the Scott County Grand Jury on February 28, 1986. The case was moved to Hinds County via Chisolm's motion for change of venue. The case was called for trial on August 27, 1986, at the conclusion of which Chisolm was found guilty of armed robbery. The Circuit Court sentenced Chisolm to a term of thirty years in the custody of the Mississippi Department of Corrections. Unhappy with this outcome, Chisolm now appeals to this Court.

III.
Chisolm first presents a Batson[3] claim. He argues that the prosecution excluded black persons from jury service for constitutionally impermissible reasons. He specifically argues that he made a prima facie showing under Batson and that the prosecution failed to articulate clear and racially neutral reasons for its use of peremptory challenges against potential black jurors.
The record reflects that Chisolm is a black person and that the jury seated for his trial  including one alternate juror  was composed of ten white persons and three black persons. The record further reflects that the prosecution exercised twelve peremptory challenges, seven of which were used to exclude black persons from the jury.
In Batson, the Supreme Court of the United States held that in order to make a prima facie showing of purposeful discrimination in the selection of a petit jury, a defendant must establish the following:
(1) that he is a member of a cognizable racial group;
(2) that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race;
(3) that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.
at pp. 96, 106 S.Ct. at pp. 1722-1723, 90 L.Ed.2d at pp. 87-88; see also Taylor v. State, 524 So.2d 565, 566 (Miss. 1988); Dedeaux v. State, 519 So.2d 886, 888 (Miss. 1988); Williams v. State, 507 So.2d 50, 52 (Miss. 1987).
Batson, supra, states that:
[o]nce the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. Though this requirement imposes a limitation in some cases on the full peremptory character of the historic challenge, we emphasize that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause. [Citations omitted]... . The prosecutor therefore must articulate a neutral explanation related to the particular case to be tried. The trial court then will have the duty to determine if the defendant has established purposeful discrimination.
See Williams v. State, 507 So.2d 50, 53 (Miss. 1987).
Quite apparently, Chisolm made a prima facie showing meeting the Batson criteria. Our focus then turns to the prosecution and its duty to "come forward with neutral, nonrace based Batson-conforming explanations for each of the peremptory *633 strikes he used on black persons." Williams v. State, 507 So.2d 50, 53 (Miss. 1987). When so viewed, it appears that each of the seven peremptory challenges used on black persons arguably pass the test, to-wit: Earnest Powell (friend of defendant); Dorothy McLin (family members convicted by prosecuting attorney); Jessie Hudson (age and no stake in community); Clifton McRoy (connections with defendant); Sandra Richardson (racial comment during voir dire proceeding); Robert Haley (age); and Ora Cook (connections with local defense attorney).
In this setting the Circuit Court ruled as follows:
I do not believe that this jury was selected by the State with a view of race. I do not find, as a matter of fact, that blacks were systematically excluded in the exercise of [the State's peremptory challenges].
Batson makes clear that discrimination findings are in substantial part findings of fact entitled to appropriate deference by a reviewing court. See Anderson v. City of Bessemer City, 470 U.S. 564, 573-75, 105 S.Ct. 1504, 1511-1512, 84 L.Ed.2d 518, 528-29 (1985); Clements v. Young, 481 So.2d 263, 269-70 (Miss. 1985). Batson then observes that, because
the trial judge's findings in the context under consideration here largely will turn on evaluations of credibility, a reviewing court ordinarily should give those findings great deference.
476 U.S. at 98 n. 21, 106 S.Ct. at 1724, n. 21, 90 L.Ed.2d at 88-89 n. 21. We have accepted this view in Lockett v. State, 517 So.2d 1346, 1352 (Miss. 1987). Applicable here is a statement made in a not totally unrelated context in Neal v. State, 451 So.2d 743 (Miss. 1984):
So long as the trial court applies the correct legal standard, we will not overturn a finding of fact made by a trial judge unless it is clearly erroneous.
451 So.2d at 753.
Against the foregoing backdrop, the Circuit Court held that the prosecuting attorney had successfully rebutted Chisolm's prima facie showing. Under the standard of review articulated in Batson and in our Lockett and Neal cases, we decline to reverse. The assignment of error is denied.

IV.
Chisolm next assigns as error the Circuit Court's refusal to sustain his objection to admission of his confession. The point is critical, as all other evidence offered by the prosecution regarding Chisolm's involvement in the robbery of Gatewood was at best circumstantial and at worst quite tenuous. The confession, however, establishes quite unequivocally Chisolm's guilt.
The indictment against Chisolm, it will be recalled, was returned on the last day of February, 1986. On March 6, 1986, Chisolm was incarcerated in the Madison County Jail upon a related charge. On that date a copy of the present indictment was served upon him and he was returned to Scott County for questioning.
Scott County Sheriff Glen Warren testified that on May 8, 1986, Chisolm was read and explained his rights and voluntarily waived same in the presence of Deputy Sheriff Will Reed and himself. According to Sheriff Warren, at this time, Chisolm signed a waiver of rights form. Warren testified that Chisolm, at no time, asked for an attorney or requested that the interrogation be discontinued. Further, Warren testified that Chisolm, in the presence of Deputy Sheriff Reed and himself, voluntarily confessed to the October 8 armed robbery of Verner Lee Gatewood. This admission of guilt was transcribed by Warren and signed by Chisolm.
Warren specifically testified that no threats of violence or promises of leniency were extended to Chisolm in order to induce the confession of guilt.
Deputy Sheriff Will Reed, Scott County Sheriff's Department, testified and corroborated the testimony of Sheriff Warren in every respect concerning Chisolm's May 8 confession. Additionally, Deputy Sheriff Reed testified that Chisolm was aware of the specific charge against him prior to making his confession.
*634 At the suppression hearing, Chisolm testified that he had only a fifth grade education and was unable to read and write. Further, Chisolm testified that he was not informed of the charge against him until during the May 8 interview with Sheriff Warren and Deputy Sheriff Reed. Chisolm claimed that he confessed only after Sheriff Warren had promised that the two armed robbery charges against him would run concurrently.[4] Nonetheless, Chisolm admitted that there were no threats or violence against him during the May 8 interrogation. Further, Chisolm testified to understanding his rights and signing the waiver of rights form.
In order for a confession to be admitted into evidence, it must have been given freely and voluntarily, and without the influence of promises or threats. Frost v. State, 483 So.2d 1345 (Miss. 1986); McElroy v. State, 204 So.2d 463 (Miss. 1967); Gross v. State, 191 Miss. 383, 2 So.2d 818 (1941). "The question of an intelligent, knowing and voluntary waiver is essentially a fact question to be determined by the judge from the totality of the circumstances." Hemingway v. State, 483 So.2d 1335, 1336 (Miss. 1986). See also Neal v. State, 451 So.2d 743 (Miss. 1984).
In Agee v. State, 185 So.2d 671 (Miss. 1966), this Court stated:
The State has the burden of proving the voluntariness of a confession. This burden is met by the testimony of an officer, or other person having knowledge of the facts, that the confession was voluntarily made without any threats, coercion, or offer of reward. This makes out a prima facie case for the State on the question of voluntariness. Lee v. State, 236 Miss. 716, 112 So.2d 254 (1959).
185 So.2d at 673.
"Once the trial judge has determined ... that a confession is admissible, the defendant/appellant has a heavy burden in attempting to reverse that decision on appeal. That finding is considered a finding of fact which will not be reversed on appeal unless manifestly in error, or contrary to the overwhelming weight of the evidence." Frost v. State, 483 So.2d at 1350.
Again applying the criteria of Neal v. State, 451 So.2d 743, 753 (Miss. 1984), and the other cases cited above, we are unable to conclude that the Circuit Court exceeded its authority when it overruled Chisolm's objection to the admission of his confession. The Circuit Court's findings that Chisolm's confession was free and voluntary and that he had given a competent intelligent waiver of his privilege against self-incrimination are supported by substantial evidence and beyond our authority to disturb. The assignment of error is denied.

V.
Finally, Chisolm assigns as error admission of the testimony of Deputy Sheriff Colan Anding to the effect that Chisolm became a suspect as a result of Deputy Anding's talking to individuals living behind the victim's residence. The reference is to Deputy Anding's conversation with the members of the McClendon family in the course of his investigation on the evening of the robbery. Chisolm's specific objection is to Anding's testimony that he was led to the McClendon home by a bloodhound. Chisolm charges that the qualifications and training of the canine had not been established.
On the evening of the robbery Deputy Anding began an investigation. He discovered and followed a trail of footprints, two separate sets, and articles of clothing, a bloody glove and a mask. This led through a field behind Gatewood's home. The footprints led to the McClendon family home and ultimately to Anding's discovery that Chisolm and Larry Carbines had been at the McClendon home earlier in the evening looking for a ride to Morton. Deputy Anding did have the assistance of bloodhounds on this occasion.
*635 Hinton v. State, 175 Miss. 308, 166 So. 762 (1936) quite properly suggests that a predicate to admission of evidence regarding investigative assistance from bloodhounds is proof of the training and experience of the particular canines. Here, however, the evidence reflects that far more than the canine sense of smell led Deputy Anding to the McClendon home; rather, that the footprints and discarded articles of clothing were equally of assistance, if not more. It is true that the prosecution offered no evidence regarding the "qualifications of the bloodhounds." This inadequacy, however, hardly rises to the dignity of reversible error.
The assignment of error is denied.

VI.
Chisolm makes no challenge to the jury's verdict on grounds of insufficiency or the weight of the evidence, nor could he with credibility. Our review of the record in this case leaves us with the firm and definite conviction that the evidence was quite sufficient that reasonable jurors might have concluded beyond a reasonable doubt that each and every element of the offense of armed robbery had been established. This being so, we have no authority but to affirm.
CONVICTION OF ARMED ROBBERY AND SENTENCE OF THIRTY (30) YEARS IMPRISONMENT AFFIRMED.
HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
ROY NOBLE LEE, C.J., not participating.
NOTES
[1] Gatewood had been carrying the pistol for protection since being robbed in late September, 1984. See companion case Chisolm v. State, 529 So.2d 635 (Miss. 1988).
[2] At trial, Anding testified that a bloodhound was also utilized in following the trail.
[3] See Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
[4] The two armed robbery charges were: (1) the charge in the case sub judice and (2) the armed robbery charge in the companion case of Chisolm v. State, 529 So.2d 635 (Miss. 1988).