529 So.2d 635 (1988)
Rickey CHISOLM
v.
STATE of Mississippi.
No. 57827.
Supreme Court of Mississippi.
July 27, 1988.
*636 Robert M. Logan, Jr., Gerald, Brand, Watters, Cox & Hemleben, Newton, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by George W. Neville, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PRATHER, ROBERTSON and ZUCCARO, JJ.
ROBERTSON, Justice, for the Court:

I.
As in what for all practical purposes is a companion case, see Chisolm v. State, 529 So.2d 630, 632 (1988) (Chisolm I), this armed robber/defendant presents a claim that the prosecuting attorney practiced racial discrimination in the exercise of peremptory challenges of prospective jurors. The issue is a bit more difficult than in Chisolm I, as several of the purportedly racially neutral reasons here offered for challenges appear rather specious. In the end, we find that defendant wholly failed to unmask the prosecutor's "reasons" when offered opportunity for rebuttal. We affirm.

II.
This is Rickey Chisolm's second appearance before this Court in as many weeks.[1] The charge is the same: armed robbery. Indeed, the victim is the same: seventy-one-year-old Verner Lee Gatewood of the Lillian community, eleven miles from Forest in rural Scott County.
Gatewood was on his tractor inspecting timber for beetles around 1:30 p.m. on September 27, 1984, when two masked men ran out of the woods brandishing pistols. While the men pointed their guns at Gatewood's head, one of them deprived their hapless victim of his pocketbook (containing approximately $160.00) and watch. They then ordered Gatewood to prostrate himself whereupon they proceeded to tape his wrist, ankles and mouth. This done, one of the perpetrators said to the other, *637 "Let's go to the store, now and rob it," and both fled.
The wallet was later recovered near some tire tracks in the woods, a $100 bill still tucked away in a secret compartment. The toboggan-style masks were also found discarded in the woods.
On May 8, 1986, the Scott County Sheriff's Office took Rickey Chisolm into custody.[2] Chisolm was being held in Canton as a suspect on a capital murder charge. Before that, he was being held in Louisiana for disturbing the peace. Chisolm gave a statement implicating Nathaniel Moore and himself in the robbery of Gatewood. According to the statement, Moore was armed with a real gun while Chisolm held a toy gun.
Chisolm was indicted on February 27, 1985, in Scott County for armed robbery. The case was moved to Hinds County on a motion for change of venue. On August 25, 1986, Chisolm was found guilty of armed robbery and sentenced to thirty (30) years imprisonment. He now brings this appeal.

III.
Chisolm argues first that the Circuit Court erred in allowing the prosecution to exclude prospective jurors by peremptory challenges based on race. He relies, of course, on Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), which held that a prosecutor's peremptory challenge of a black juror violates the Equal Protection Clause where done for a racially discriminatory purpose.
Among the few clues Batson gives how we are to enforce the new claim it announces, we are directed to concentrate on the juror excluded, not those accepted (except, of course, when comparing the bases for exclusion). Batson tells us
`A single individiously discriminatory governmental act' is not `immunized by the absence of such discrimination in the making of other comparable decisions'. 476 U.S. at 95 [106 S.Ct. at 1722], 90 L.Ed.2d at 87.
That the prosecutor accepted other black persons as jurors is no defense to a Batson claim.
Batson recognizes a further analogy in Title VII or employment discrimination cases, stating "A `pattern'
of strikes against black jurors included in the particular venire might give rise to an inference of discrimination."
Batson, 476 U.S. at 94-96, ns. 18 & 19, 106 S.Ct. at 1721-22, ns. 18 & 19, 90 L.Ed.2d at 86-87, ns. 18 & 19. See also McCleskey v. Kemp, 481 U.S. 279- ___, 107 S.Ct. 1756, 1767-68, 95 L.Ed.2d 262, 279-80 (1987) (statistical disparities may be used as proof of an equal protection violation in jury selection cases). We accepted the employment discrimination analogy in Lockett v. State, 517 So.2d 1346, 1349 (Miss. 1987).
Though instructive in the abstract, none of this carries us far today.
Factually, Chisolm is black. The jury which tried him was composed of eight white persons and four black persons, with one white alternate. The prosecuting attorney exercised ten peremptory challenges. Nine of those were used to exclude black persons from the jury. Five of these were because the prospective juror was unemployed like Chisolm and the prosecuting attorney suggested that these jurors might identify with Chisolm. Another was purportedly involved in illegal activities. One was excused because of some labor union difficulties. Another was excused because he raised his hand when asked if he or anyone in his family had ever been accused of a crime.
We are concerned particularly with the remaining two black prospective jurors who were excused, Earnest Seals and Vivian Payne. In the course of the prosecution's reasons for these two peremptory challenges, the following colloquy between the Circuit Court and the district attorney took place:
BY THE COURT:
Why did you excuse Earnest Seals?
BY MR. PEARCE:

*638 Your Honor, he works for Mississippi ETV, and the district attorney over here has told me that Mississippi ETV has done two documentaries on law enforcement in Hinds County which was very unfavorable to the law enforcement.
Then in the case of prospective juror Payne, the following took place:
BY THE COURT:
Vivian Payne, why did you excuse her?
MR. PEARCE:
The district attorney here referred to a radio station documentary that was unfavorable to law enforcement, in general, and her husband works for the radio station.
As in Chisolm I, there can be no doubt that Chisolm made his prima facie showing of purposeful discrimination in the selection of the jury. To review briefly, the components of such a prima facie showing are that
(1) the defendant is a member of a cognizable racial group;
(2) the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race; and
(3) these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the venireman from a petit jury on account of their race.
See Batson v. Kentucky, 476 U.S. 79, 95-98, 106 S.Ct. 1712, 1722-1723, 90 L.Ed.2d 69, 87-88 (1986); Chisolm I, 529 So.2d at 632 (and cases cited therein).
Once the defendant has made his prima facie showing, the burden shifts to the prosecution to come forward with a racially neutral explanation for each of his challenges. Williams v. State, 507 So.2d 50, 52 (Miss. 1987). The reasons given must be "related to the particular case to be tried." Batson v. Kentucky, 476 U.S. at 98, 106 S.Ct. at 1723, 90 L.Ed.2d at 88; Dedeaux v. State, 519 So.2d 886, 888 (Miss. 1988); Irving v. State, 498 So.2d 305, 318 (Miss. 1986). Such an explanation must be "clear and reasonably specific." Lockett v. State, 517 So.2d 1346, 1349 (Miss. 1987).
The district attorney having given his "reasons", Batson procedure then authorized Chisolm to rebut the "prosecutorial explanations, if he is able to do so." See Johnson v. State, 529 So.2d 577, 584 (Miss. 1988); Taylor v. State, 524 So.2d 565, 566 (Miss. 1988); Abram v. State, 523 So.2d 1018, 1019 (Miss. 1988); Dedeaux v. State, 519 So.2d 886, 891 (Miss. 1988); Joseph v. State, 516 So.2d 505 (Miss. 1987); Harper v. State, 510 So.2d 530, 532 (Miss. 1987); Williams v. State, 507 So.2d 50, 53 (Miss. 1987).
Chisolm was afforded in fact this opportunity for rebuttal at the conclusion of the district attorney's explanations of his peremptory challenges. Defense counsel offered no proof at all. His statement was as ineffective as it was conclusory.
BY MR. LOGAN:
The Defendant would object that the District Attorney has arbitrarily excluded blacks peremptorily, using the reason on several jurors that they were unemployed. The Defendant feels that that is tantamount to excluding them for their race in this case.
The Court then held that the jury "was not selected with race as a basis for the exercising of challenges by the State. Therefore, you're [Defendant Chisolm's] objection is overruled."
In reviewing trial court rejection of Batson claims, we are mindful that we have before us what are essentially findings of fact and, accordingly, our scope of review is limited. Lockett v. State, 517 So.2d 1346, 1349-52 (Miss. 1987). By the same token, a part of the Batson mandate is that we remain sensitive to the inescapable reality that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Batson, 476 U.S. at 96, 106 S.Ct. at 1722-23, 90 L.Ed.2d at 87; Dedeaux v. State, 519 So.2d at 888; Lockett v. State, 517 So.2d at 1349.
These thoughts in mind, we have considered carefully the district attorney's peremptory challenges of prospective jurors Seals and Payne. That Seals worked *639 for Mississippi ETV or that Payne's husband worked for a radio station seems quite pretextual, particularly in the absence of any showing that either had anything to do with the purported telecast/broadcast said to have been anti-law enforcement. On the other hand, this is but illustrative of what peremptory challenges have traditionally been all about. Prior to Batson, lawyers took it as their birthright that a peremptory challenge could be exercised for good reason or bad reason or for no reason at all. Now that has been qualified to the point where the challenge cannot be exercised for a racially discriminatory reason. But this in no way precludes exercise of a peremptory challenge for a non-race based reason that objective and fair-minded persons might regard as absurd.
Again we are sensitive to the possibility that the reasons given for challenging prospective jurors Seals and Payne may well have served as masks for actual racially discriminatory purposes. But if that were so, it was incumbent upon Chisolm to come forward with proof when given the opportunity for rebuttal. In fact, his meager rebuttal did not even mention these two jurors.
The question with regard to these two jurors is quite troublesome. We do not wish to send a message that any superficially non-race based reason will pass muster under Batson. In the end, we hold that, notwithstanding Chisolm's prima facie showing, the Circuit Court was well within its authority when it held that the district attorney had articulated neutral, non-race based explanations for striking Seals and Payne, as well as the other seven black persons challenged peremptorily.
The assignment of error is denied.

IV.
Chisolm assigns as error the Circuit Court's refusal to sustain his challenge for cause to prospective juror Eva Woodard. The record reflects that on voir dire Woodard stated that she had been robbed before. She emphasized, however, that she could set that experience aside and decide the present case impartially on the law and the facts. The Court denied Chisolm's challenge for cause. Thereafter, Chisolm challenged Woodard peremptorily.
Chisolm fails a threshold test. Prerequisite to presentation to such a claim on appeal is a showing that he had exhausted all of his peremptory challenges and that the incompetent juror was forced upon him by the trial court's erroneous ruling. No such showing may be made in this case, for Chisolm did in fact strike Woodard peremptorily. See Ross v. Oklahoma, ___ U.S. ___, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988).
The assignment of error is denied.

V.
Chisolm next assigns as error the Circuit Court's refusal to sustain his objection to admission of his confession. The question legally and factually is in all relevant parts identical to that we considered in Chisolm I, Part IV. For the reasons there stated, this assignment of error is denied.

VI.
Chisolm's final assignment of error is that the Circuit Court erred in overruling his objections to allegedly improper closing argument by the prosecuting attorney.
Specifically, Chisolm points to the following statements made by the prosecutor in closing arguments:
Think about yourself being a seventy-one-year-old person, minding your own business, driving your own tractor on your own land, business as usual, and then one day this happens to you and, all of a sudden, you are laying there on the ground.
Defense counsel objected stating "He's asking the jury to put themselves in the place of the victim." This the trial court promptly overruled.
It has long been the law in this state that "golden rule" arguments, i.e., asking the jurors to put themselves in the place of one of the parties, will not be permitted in civil cases. In Danner v. Mid-State Paving *640 Co., 252 Miss. 776, 786, 173 So.2d 608 (1965), this Court stated:
It is the essence of our system of courts and laws that every party is entitled to a fair and impartial jury. It is a fundamental tenet of our system that a man may not judge his own case, for experience teaches that men are usually not impartial and fair when self interest is involved. Therefore, it is improper to permit an attorney to tell the jury to put themselves in the shoes of one of the parties or to apply the golden rule. Attorneys should not tell a jury, in effect, that the law authorizes it to depart from neutrality and to make its determination from the point of view of bias or personal interest.
See also Copiah Dairies v. Addkison, 247 Miss. 327, 338, 153 So.2d 689 (1963); 70 A.L.R.2d 927; 53 Am.Jur. Trial § 496, p. 401; 88 C.J.S. Trial, § 191, p. 376.
There is no reason on principle why this prohibition on "golden rule" arguments should not extend as well to criminal cases. See Tuff v. State, 509 So.2d 953 (Fla.App. 1987); Bullard v. State, 436 So.2d 962 (Fla.App. 1983); Bertolotti v. State, 476 So.2d 130, 133 (Fla. 1985); Estes v. Commonwealth, 744 S.W.2d 421, 426 (Ky. 1987); and Lycans v. Commonwealth, 562 S.W.2d 303, 306 (Ky. 1978). On the other hand, the argument was sufficiently insignificant in the overall context of the case before us that we find the error harmless. See Bertolotti v. State, 476 So.2d 130, 133 (Fla. 1985); James v. State, 263 So.2d 284, 286 (Fla.App. 1972).
The assignment of error is denied.
AFFIRMED.
HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
ROY NOBLE LEE, C.J., not participating.
NOTES
[1] The robbery in Chisolm I occurred two weeks later on October 8, 1984. The second robbery reached our docket first and was decided first, an oddity which, as will be apparent, holds no significance.
[2] See Chisolm I for a fuller statement of the events leading to Rickey Chisolm's custody.