ROBERTSON, Justice,
concurring:
What has happened in this case is fundamentally morally wrong. A black man, charged with the capital murder and sexual brutalization of an elderly and apparently defenseless white woman, has been put on trial for his life before an all white jury, a jury seated after the prosecutor was allowed peremptorily to strike all seven black potential jurors. And it was so unnecessary. On this evidence a jury of twelve cerebral eunuchs would have convicted.
Still, I can but affirm. The enforceable positive law, as I understand it, permits what the record reflects has occurred. Though I have no doubt much of our law has its moorings in notions of political morality, e.g., Pharr v. State, 465 So.2d 294, 297 (Miss.1984), I have always thought it a virtue that the judicial mind keep before it the proper distinctions between law and morality and enforce the latter only insofar as it may be reflected in the former. See Frazier v. State By and Through Pittman, 504 So.2d 675, 714-15 n. 7 (Miss. 1987); Hart, The Concept of Law, 181-207 (1961); Holmes, The Path of the Law, 10 Harv.L.Rev. 457-464 (1897).
There was once hope, and but recently. When the sun set on April 30, 1986, the Supreme Court had declared unlawful purposeful use of peremptory challenges to exclude black persons from jury service. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). It is true that Batson paints with a broad brush. From the clear view hindsight so often provides, our law job was to hang flesh upon Bat-son’s skeletal frame; to be sure, to fit it within the fabric of our law of criminal procedure but to do so in a way that both fits the Batson text and justifies Batson as a political and moral judgment legislated by a superior and authoritative law maker, Williams v. State, 507 So.2d 50, 53 (Miss. 1987); Thomas v. State, 517 So.2d 1285, 1293 (Miss.1987) (Robertson, J., dissenting), a judgment founded upon the realities that substantial and invidious racial discrimination was being practiced in jury selection, that this was a state-sponsored sin, and that two decades’ experience had shown Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) an inept antidote. If anything is clear, it is that Batson was meant to change things, not just form but substance. The American federal judicial system works only to the extent its fifty partners in the main accept with good cheer the Supremacy Clause’s so easily evaded mandate.
I would have thought Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) a clarion call that “We really mean it!” Yet history records that Batson’s effect was quickly eviscerated.[1] Except a prosecutor dimwittedly confess his discriminatory purpose, Goggins v. State, 529 So.2d 649, 651-52 (Miss.1988), or offer no reason at all in support of his strike, Conerly v. State, 544 So.2d 1370, 1372 (Miss.1989), he may with impugnity exclude black jurors to the limit of his peremptory challenges. Our positive post-Batson law, as I perceive it, accepts that any pretext will pass for a racially neutral reason for exclusion. See Wheeler v. *177 State, 536 So.2d 1347, 1351 (Miss.1988); Chisolm v. State, 529 So.2d 630, 632-33 (Miss.1988); Johnson v. State, 529 So.2d 577, 582-85 (Miss.1988); Lockett v. State, 517 So.2d 1346, 1356-57 (Miss.1987). We have held that Batson “in no way precludes exercise of a peremptory instruction challenge for a non-race based reason that objective and fair minded persons might regard as absurd,” Chisolm v. State, 529 So.2d 635, 639 (Miss.1988), an utterance for which I bear no small burden. Our law has unleashed and exalted the Bat-son-recognized
fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate.
Batson, 476 U.S. at 96, 106 S.Ct. at 1723. In sum, I see no principled basis upon which we may here reverse without violence to our en gross post-Batson pronunci-amentos.[2] And some federal courts are even worse. E.g., United States v. Davis, 809 F.2d 1194, 1202 (6th Cir.1987).
But a step back from our legal blinders and into the world of common sense reveals a different picture. The pretense that the prosecutor had in mind racially neutral reasons for striking each and every one of these seven black potential jurors may but call to mind “the eerie atmosphere of never-never land” in which a former Attorney General of this state once urged, and a U.S. District Court once found, that Mississippi had no official policy of racial segregation.[3] Meredith v. Fair, 298 F.2d 696, 701 (5th Cir.1962). Little beyond common sense is required to perceive the virtually non-existent statistical probability that the prosecuting attorney below in fact exercised the seven peremptory challenges at issue for neutral, non-race based reasons, a point I have offered before without effect.. Lockett v. State, 517 So.2d 1346, 1358-59 (Miss.1987) (Robertson, J., dissenting). Enforcement of Batson’s paper right has simply not been forthcoming. I can but think of Holmes’ utterance from another context “Legal obligations that exist but cannot be enforced are ghosts that are seen in the law but that are elusive to the grasp.” The Western Maid, 257 U.S. 419, 433, 42 S.Ct. 159, 161, 66 L.Ed. 299, 302 (1922); see also Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319, 321 (1920).
Because the day is late and we are bound by our post-Batson precedents, I see no choice but to do expressly what the majority does implicitly: pass the buck from whence it came, to the Supreme Court of the United States, with a plea that Batson be overruled or given teeth.

. Apart from the problem of today's case, we indefensibly held defendants to procedural burdens from which prosecutors were exempted. Contrast Williams v. State, 507 So.2d 50 (Miss. 1987) from Thomas v. State, 517 So.2d 1285 (Miss.1987) and Jones v. State, 517 So.2d 1295 (Miss.1987); see particularly my dissenting opinion in Thomas, 517 So.2d at 1288-95.

. One point of Batson procedure has been saved and I applaud the majority for recognizing it. Our cases do say, once the prosecutor has tendered his reasons for challenge, the defense may rebut, Chisolm v. State, 529 So.2d 635, 638 (Miss.1988); Johnson v. State, 529 So.2d 577, 584 (Miss.1988); Taylor v. State, 524 So.2d 565, 566 (Miss.1988); Abram v. State, 523 So.2d 1018, 1019 (Miss.1988); Dedeaux v. State, 519 So.2d 886, 891 (Miss.1988); Joseph v. State, 516 So.2d 505 (Miss.1987); Harper v. State, 510 So.2d 530, 532 (Miss.1987); Williams v. State, 507 So.2d 50, 53 (Miss.1987). Nothing in Bat-son or our cases precludes the defense from attempting to show the prosecutor's reasons as false or sham. The point, however, avails Davis nothing on this record. After the prosecution gave its "neutral explanations", counsel for Davis asked to "make a record on this.” The trial judge replied, "Well, what record do you want to make? It’s what the prosecutor considers their reasons.” Defense counsel alleged that the reasons were inadequate under Batson. It appears quite clear the Circuit Court misapprehended this point of Batson procedure, and had Davis tendered us a record that even halfway suggested he had a meaningful rebuttal to make and was denied same, I would reverse. If Davis had tendered a rebuttal, the Court would have been obligated to hear it. Davis' record is deficient and no reason appears why we ought exempt him from the rule. Rule 103(a)(2), Miss.R.Ev. Again the forms require affirmance.

. Compare Edwards v. Thigpen, 682 F.Supp. 1374, 1379-80 (S.D.Miss.1987) (discussion of jury selection practices of Hinds County District Attorney’s Office).