# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-CT-00895-SCT

*JELANI MILES a/k/a JELANI N. MILES*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 04/10/2019 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS-BLACKMON |
| TRIAL COURT ATTORNEYS: | TAMETRICE EDRICKA HODGES |
| | DAVID FITZGERALD LINZEY |
| | AKILLIE MALONE OLIVER |
| | CHUCK McRAE |
| | DREW McLEMORE MARTIN |
| | WILLIAM B. KIRKSEY |
| COURT FROM WHICH APPEALED: | YAZOO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | CHUCK McRAE |
| | THOMAS M. FORTNER |
| | DREW McLEMORE MARTIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | AKILLIE MALONE OLIVER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. THE JUDGMENT OF THE YAZOO COUNTY CIRCUIT COURT IS AFFIRMED IN PART, AND THE CASE IS REMANDED - 06/23/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KITCHENS, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    Jelani Miles was convicted of shooting into a vehicle, aggravated assault, and second-degree murder. The Circuit Court of Yazoo County sentenced Miles to five years for shooting into a vehicle, twenty years with five years suspended for aggravated assault, and life for second-degree murder, with all sentences to run consecutively. Miles appealed, and this Court deflected his appeal to the Court of Appeals, which affirmed. *Miles v. State*, No. 2019-KA-00895-COA, 2021 WL 2659555 (Miss. Ct. App. June 29, 2021). We granted Miles's petition for a writ of *certiorari* to review the remedy ordered by the Court of Appeals for the trial court's imprecise and incomplete analysis under *Batson v. Kentucky*, 476 U.S. 79, 98, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). We find that the Court of Appeals applied the appropriate remedy by remanding for the trial court to conduct a hearing to complete the second and third steps of the *Batson* analysis for three challenged venirepersons. Therefore, the judgment of the Circuit Court of Yazoo County is affirmed in part, and the case is remanded.

**DISCUSSION**

¶2.    Jelani Miles fired an assault-style rifle into a crowd of people in Yazoo City, killing Cortez Tate and injuring Perry Hollins. A detailed description of the events can be found in the opinion of the Court of Appeals. *Miles*, 2021 WL 2659555, at *1. After an eyewitness was murdered and Miles's home was shot into, the trial court declared a mistrial. Miles was tried a second time, and the trial court admitted a statement, recorded by the police and given by the eyewitness before his death, identifying Miles as the shooter.

¶3.     This case concerns error that occurred during jury selection at Miles's second trial. We must determine the appropriate remedy for errors in the trial court's application of the burden-shifting process when assessing a *Batson* challenge to a peremptory strike. *Batson* held that "the prosecution may not use peremptory strikes in a discriminatory manner." *Hardison v. State*, 94 So. 3d 1092, 1097 (Miss. 2012) (citing *Batson*, 476 U.S. at 82-84). *Batson* applies to both the State and to defendants. *Id.* (citing *Griffin v. State*, 610 So. 2d 354, 356 (Miss. 1992)). This case concerns a reverse-*Batson* challenge, which is a *Batson* challenge made against the defense. *Id.* (citing *Bailey v. State*, 78 So. 3d 308, 318-20 (Miss. 2012); *Henley v. State*, 729 So. 2d 232, 239-41 (Miss. 1998)).

¶4.     *Batson* established a three-part burden shifting scheme for assessing whether a challenged peremptory strike was discriminatory:

> First, the party objecting to the use of a peremptory strike has the burden to make a prima facie case that race was the criterion for the strike. Second, if the objecting party makes such a showing, the burden shifts to the striking party to state a race-neutral reason for the strike. Third, after the striking party offers its race-neutral explanation, the court must determine if the objecting party met its burden to prove purposeful discrimination in the exercise of the peremptory strike—that the stated reason for the strike was merely a pretext for discrimination.

*H.A.S. Elec. Contractors, Inc. v. Hemphill Constr. Co.*, 232 So. 3d 117, 123 (Miss. 2016) (footnote omitted) (citing *Pitchford v. State*, 45 So. 3d 216, 224 (Miss. 2010)). This Court previously has accepted race-neutral reasons including "age, demeanor, marital status, single with children, *prosecutor distrusted juror*, educational background, employment history, criminal record, young and single, friend charged with crime, unemployed with no roots in community, posture and demeanor indicated juror was hostile to being in court, juror was

3

late, [and] short term employment." ***Hardison***, 94 So. 3d at 1099 (internal quotation marks omitted) (quoting ***Davis v. State***, 660 So. 2d 1228, 1242 (Miss. 1995)).

¶5. This Court applies a highly deferential standard of review on appeal of a trial court's ***Batson*** rulings. ***Id.*** We will reverse only if the trial court's factual findings are "clearly erroneous or against the overwhelming weight of the evidence." ***Strickland v. State***, 980 So. 2d 908, 916 (Miss. 2008) (emphasis omitted) (internal quotation marks omitted) (quoting ***Smith v. State***, 835 So. 2d 927, 940 (Miss. 2002)). "But to reach [a ***Batson***] finding, the trial judge must conduct a proper ***Batson*** analysis." ***H.A.S.***, 232 So. 3d at 123.

¶6. The Court of Appeals found that the trial court's ***Batson*** analysis concerning three challenged venirepersons was improper, a decision with which Miles and the State agree. ***Miles***, 2021 WL 2659555 at *1. During jury selection at the second trial, Miles exercised peremptory strikes against seven white prospective jurors. The State made a reverse-***Batson*** challenge to Miles's strikes. The trial court found that a *prima facie* case of discrimination had been made and asked Miles to provide race-neutral reasons for each strike. Regarding four prospective jurors, the trial court accepted Miles's race-neutral reasons and allowed the strikes. The trial court found that Miles's reasons for striking prospective jurors 23 and 32 were not race neutral and then, without asking whether the State had any argument regarding pretext, the trial court placed those two individuals on the jury panel. What occurred regarding prospective jurors 23 and 32 follows:

> MR. MCRAE: [Juror 23] works for CNA Insurance Company. I don't like anybody that works for the insurance companies on my juries in criminal cases.

4

THE COURT: The Court—the Court does not find a race-neutral reasons [sic] on Brittany Lipsey and will deny D-3 on Ms. Lipsey. And we'll put her in the panel.

Okay. Thirty-two, Lamar Dorris, white male. D-4.

. . . .

MR. MCRAE: This is the one that works for the US Government—US Fishing Wildlife Services and a Christian church. And the combination of those two—and he served on a jury before[,] criminal case primarily.

. . . .

MR. MCRAE: Served on a criminal case before. And I'd rather have people on there that does [sic] not serve on criminal cases before if possible. And for those reasons, Your Honor, we struck him.

THE COURT: The Court does not find a race neutral reason on 32 and will put him back in the panel and strike D-4.

The trial court did not afford the State an opportunity to rebut Miles's race-neutral reasons for the strikes of prospective jurors 23 and 32. Nor had the trial court asked the State for any rebuttal that it might have had for Miles's race-neutral reasons concerning the four prospective jurors that he was allowed to strike.

¶7. Regarding the third prospective juror at issue, Miles explained that he exercised a strike on prospective juror 35 because his spouse previously had worked for the Yazoo County Board of Supervisors. Although the trial court had not asked the State if it wanted to provide any argument on pretext for prospective jurors 23 and 32 or for the other four venirepersons, the trial court did ask the State if it had a response to Miles's proffered race-neutral reason for striking prospective juror 35. The State responded that the strike of prospective juror 35 was part of a pattern of strikes against white males, that prospective

5

juror 35 had not spoken a word during *voir dire*, and that Miles had not exercised strikes on non-white jurors that worked for the county. The trial court ruled that "the Court does not find a race neutral reason for [prospective juror 35] and will put him back on—put him back on the panel at number six."

¶8. Before the Court of Appeals, Miles argued that the trial court erred by failing to assess whether the race-neutral reasons he had provided for the three strikes were pretextual. The Court of Appeals ascertained that the situation was akin to ***Hardison***, in which the trial court had not proceeded to the third step of the ***Batson*** analysis, pretext. ***Hardison*** explained that "the proponent of a strike—at the second step of the analysis—need only show a race-neutral reason." ***Hardison***, 94 So. 3d at 1099-1100. At that point, the trial court must assess the facial validity of the proffered reason for the strike. ***Id.*** at 1100 (quoting ***Purkett v. Elem***, 514 U.S. 765, 768, 115 S. Ct. 1769, 131 L. Ed. 2d 834 (1995)). Only if a discriminatory intent is inherent in the proffered reason will the strike be denied. ***Id.*** In other words, at the second step, the proponent of the strike meets its burden by providing a facially valid race-neutral reason for the strike. ***Id.*** If the proponent does so, then the burden shifts to the opponent of the strike to persuade the trial court that the proffered race-neutral reason is a pretext for discrimination. ***Id.*** "Thus, it is at the third-step (pretext)—not the second step of the analysis—that persuasiveness becomes relevant." ***Id.*** (citing ***Purkett***, 514 U.S. at 768).

¶9. The error in this case occurred because the trial judge did not perform the third step of the ***Batson*** analysis. For prospective jurors 23 and 32, the trial judge found that Miles's proffered reasons were not race neutral. But the reasons proffered for both strikes are reasons that have been established by this Court to be facially race neutral. ***Lockett v. State***, 517 So.

6

2d 1346, 1354-54 (Miss. 1987) (finding that employment history and prior jury service have been deemed facially race-neutral reasons for a strike). Although Miles had met his burden on the second step, the trial court failed to recognize its duty to proceed to the third step and determine whether the reasons given were a pretext for discrimination. Further, the trial court did not give the State an opportunity to respond with any pretext argument. For prospective juror 35, the trial court did ask the State for any response, but the Court of Appeals found that the record was unclear on whether the trial court's ruling had been based on a finding that Miles's reason for the strike was not race neutral on its face or whether the trial court had considered the State's pretext argument in making its ruling. The Court of Appeals found "the record is unclear on the ultimate question the trial court was tasked with deciding under the three-step *Batson* procedure." *Miles*, 2021 WL 2659555, at *8.

¶10.    In *Hardison*, after finding a *prima facie* case of discrimination, the trial court found that Hardison's proffered reason, that the venire member favored the prosecution, was not race neutral. *Hardison*, 94 So. 3d at 1100. The trial court did not consider pretext. *Id.* On appeal, this Court recognized that Hardison had provided a race-neutral reason for the strike, which necessitated the trial court's proceeding to the third step of the *Batson* analysis. *Id.* If the trial court correctly had deemed Hardison's reason race neutral, then it would have afforded the State "the opportunity and burden to prove pretext." *Id.* at 1101. Because the trial court never asked the State for any response it might have, Hardison never had the opportunity to respond to try to rebut "an argument the State was never given the opportunity to make." *Id.* Here, the Court of Appeals determined that the appropriate remedy was to remand the case for a limited *Batson* hearing. *Miles*, 2021 WL 2659555, at *8. Three judges

7

disagreed, arguing that under *Hardison* the judgment should have been reversed and the case remanded for a new trial. *Miles*, 2021 WL 2659555, at \*11 (Westbrooks, J., concurring in part and dissenting in part).

¶11.    At issue are the competing remedies this Court has outlined for errors in the trial court's application of *Batson*'s burden-shifting scheme. The Court in *Hardison* found that the error required reversal and remand for a new trial. *Hardison*, 94 So. 3d at 1102. *Hardison* acknowledged that the United States Supreme Court has held that, because a defendant has no "freestanding constitutional right to peremptory challenges[,]" the erroneous denial of a peremptory challenge is not automatic reversible error. *Id.* at 1101 (citing *Rivera v. Illinois*, 556 U.S. 148, 161-62, 129 S. Ct. 1446, 173 L. Ed. 2d 320 (2009)). *Hardison* joined other states to hold that, as a matter of state law, "a trial court cannot deprive defendants of their right to a peremptory strike unless the trial judge properly conducts the analysis outlined in *Batson*." *Id.* This Court held that the erroneous denial of a peremptory strike is not harmless error if the challenged juror "actually sits on the panel that convicts the defendant." *Id.* at 1102 (internal quotation mark omitted) (quoting *State v. Vreen*, 143 Wash. 2d 923 (Wash. 2001), *abrogated by Rivera v. Illinois*, 556 U.S. 148, 129 S. Ct. 1446, 173 L. Ed. 2d 320 (2009)). "Therefore, when a trial judge erroneously denies a defendant a peremptory strike by failing to conduct the proper *Batson* analysis, prejudice is automatically presumed, and we will find reversible error." *Id.* Because the trial court erroneously had denied Hardison's right to a peremptory strike, the Court reversed and remanded for a new trial. *Id.*

8

¶12.    But in ***H.A.S. v. Hemphill***, this Court ordered a different remedy for an almost identical error. ***H.A.S.***, 232 So. 3d at 125. In ***H.A.S.***, the plaintiff made a ***Batson*** challenge to two of the defendant's peremptory strikes. ***Id.*** at 120. The trial court required the defendant to provide race-neutral reasons for the strikes. ***Id.*** at 123. But for one of the challenged venirepersons, instead of considering whether the stated reason, the person's age, was a pretext for discrimination, the trial court denied the ***Batson*** challenge because no established pattern of discrimination had been shown. ***Id.*** at 124. On appeal, this Court found that the trial court had erred by requiring the opponent of the strike to prove a pattern of discrimination instead of pretext. ***Id.*** Because only one instance of discrimination is enough to show discriminatory purpose, H.A.S. had not needed to show a pattern. ***Id.*** Rather, to defeat the strike, it was required "to prove that there [was] purposeful discrimination in the exercise of the peremptory strike, i.e., that the reason given was a pretext for discrimination." ***Id.*** (internal quotation marks omitted) (quoting ***Pitchford***, 45 So. 3d at 224). Because the trial court had not performed step three, the record was unclear on "whether Hemphill's stated reason for striking [the potential juror] was race neutral or merely a pretext for purposeful discrimination." ***Id.*** This Court cited ***Hardison*** favorably throughout its analysis. But instead of reversing and remanding for a new trial, the Court, without discussing its deviation from the remedy applied in ***Hardison***, remanded "to afford [H.A.S.] a full hearing on its claim Hemphill's strike of Taylor was discriminatory." ***H.A.S.***, 232 So. 3d at 124. At the hearing, H.A.S. would be allowed to prove purposeful discrimination, and Hemphill could defend age as the reason for the strike, with the parties' being limited to the existing record of the

9

original hearing. Then, the trial court would perform "the third step of the *Batson* analysis." *Id.* at 125.

¶13.   A review of our case law indicates that the holding in *H.A.S.* comports with this Court's prior decisions remanding for a post-trial *Batson* hearing when no hearing occurred or when the trial court failed to perform all steps of the *Batson* analysis. In *Manning v. State*, 735 So. 2d 323, 341 (Miss. 1999), this Court found that the trial court should have, but did not, hold a *Batson* hearing when Manning objected to the jury's racial composition after jury selection. The Court held that the trial court had erred by not requiring the State to provide race-neutral reasons for two peremptory strikes and that "[s]uch failure to follow the proper procedure required after a *Batson* challenge requires reversal for a *Batson* hearing." *Manning*, 735 So. 2d at 341. The Court relied on a long line of cases remanding for a *Batson* hearing when no hearing was held or when the trial court missed a step of the *Batson* analysis. *Berry v. State*, 703 So. 2d 269, 295 (Miss. 1997); *Thorson v. State*, 653 So. 2d 876, 879-80 (Miss. 1994); *Bush v. State*, 585 So. 2d 1262, 1268 (Miss. 1991); *Baskins v. State*, 528 So. 2d 1120 (Miss. 1988); *Dedeaux v. State*, 519 So. 2d 886, 891 (Miss. 1988); *Joseph v. State*, 516 So. 2d 505 (Miss. 1987); *Harper v. State*, 510 So. 2d 530, 532 (Miss. 1987); *Williams v. State*, 507 So. 2d 50, 53 (Miss. 1987).

¶14.   After *H.A.S.*, the Court of Appeals faced the same question about the remedy in *Watts v State*, 281 So. 3d 873 (Miss. Ct. App. 2019), another reverse-*Batson* case. After the trial court found a *prima facie* case of discrimination, it directed the defense to provide race-neutral reasons for its strikes. *Watts*, 281 So. 3d at 878. The defense explained that it had struck one venireperson because he was a banker. *Id.* As in this case, the trial court

erroneously found that the prospective juror's employment was not a facially race-neutral reason and placed the individual on the jury. *Id.* The Court of Appeals held that the trial court had erred by failing to consider pretext and, relying on *Hardison*, it concluded that the error required that the case be reversed and remanded for a new trial. *Watts*, 281 So. 3d at 879.

¶15.    In contrast to *Watts*, in this case, the Court of Appeals determined that the appropriate remedy for the error was set forth by *H.A.S.*, in which the Court remanded for a limited hearing to complete the *Batson* procedure:

> we remand this case for the limited purpose of allowing the trial court to conduct a hearing to separate and complete the second and third steps of the *Batson* analysis for Jurors 23, 32, and 35. On remand, should the court move beyond step two, the State should be allowed "the opportunity to prove purposeful discrimination." [*H.A.S.*, 232 So. 3d] at 125 (¶ 27). Further, Miles would then be allowed to defend his previously stated reasons for the strikes. *Id*. However, consistent with *H.A.S.*, he would be "restricted from giving any new, race-neutral reasons to justify the strike." *Id*. In accordance with the precedent in *H.A.S.*, both sides would be "limited to using the record as it existed at the time of the original *Batson* hearing." *Id*.

*Miles*, 2021 WL 2659555, at *8.

¶16.    The time has come for this Court to resolve the discrepancy between the remedies for a trial court's failure to conduct a complete *Batson* analysis announced in *Hardison* and in *H.A.S. Hardison* held that a litigant has a right to exercise a peremptory strike and that, if the trial court erroneously denies a peremptory strike, the error is not harmless if the objectionable individual serves on the jury that convicted the defendant. *Hardison*, 94 So. 3d at 1101-02. *H.A.S.* held that the remedy for the trial court's failure to follow the three-step *Batson* analysis is to remand for a hearing, "limited to using the record as it existed at the time of the original *Batson* hearing," at which the proper *Batson* analysis must be completed.

11

*H.A.S.*, 232 So. 3d at 125. After the hearing, an appellate court can review the trial court's *Batson* rulings to determine whether they were clearly erroneous or against the overwhelming weight of the evidence. *Strickland*, 980 So. 2d at 916 (quoting *Smith*, 835 So. 2d at 940).

¶17.   If the trial court erroneously denied a peremptory strike in this case, a new trial is required because all three challenged individuals served on the jury that convicted Miles. *Hardison*, 94 So. 3d at 1102. We hold that the remedy ordered by *H.A.S.* and the Court of Appeals in this case, adopted in *Hardison* and applied numerous times in our former decisions, adequately safeguards a litigant's right to a exercise a peremptory strike. For that reason, we affirm the judgment of the Court of Appeals remanding this case for a hearing to complete the *Batson* analysis.

## CONCLUSION

¶18.   We hold that the Court of Appeals correctly remanded this case for a limited *Batson* hearing in accordance with this Court's decision in *H.A.S.*, 232 So. 3d at 125. Therefore, the decision of the Circuit Court of Yazoo County is affirmed in part, and the case is remanded.

¶19.   **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. THE JUDGMENT OF THE YAZOO COUNTY CIRCUIT COURT IS AFFIRMED IN PART,  AND THE CASE IS REMANDED.**

   **RANDOLPH, C.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR. KING, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

12