# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 95-US-00001-SCT

*ROBERT SIMON, JR.*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 7/6/90 |
| TRIAL JUDGE: | HON. PEARSON |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHNNIE E. WALLS, JR. |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | NA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 8/1/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 8/22/96 |

**EN BANC.**

**MILLS, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. In June of 1990, Robert Simon, Jr., was convicted in the Circuit Court of Jones County on change of venue from Quitman County of the crimes of capital murder, sexual battery, and kidnaping. Simon was convicted by a jury composed of two African-Americans and ten whites, five males and seven females. *Simon*, 633 So.2d at 409. After a jury in a separate sentencing hearing was unable to reach a unanimous verdict as to the imposition of the death penalty, Simon was sentenced to consecutive terms of life imprisonment for capital murder, thirty years for sexual battery, and thirty years for kidnaping in the custody of the Mississippi Department of Corrections.

¶2. Soon thereafter he appealed this conviction to the Supreme Court of Mississippi, raising as one issue whether the State was required to give a gender-neutral reason for peremptory challenges used to remove women from a jury. In response to this assignment of error this Court wrote:

> There is no merit to Simon's claim that the State was required to give a "gender-neutral" reason for peremptorily challenging women. The Equal Protection Clause does not extend to gender.

*United States v. Hamilton*, 850 F.2d 1038, 1042 (4th Cir.1988). But see *United States v. DeGross*, 913 F.2d 1417, 1423 (9th Cir.1990). And Batson should not be extended to challenges of gender-based discrimination. *United States v. Broussard*, 987 F.2d 215 (5th Cir.1993).

Simon cites *United States v. DeGross* and *Powers v. Ohio* to support his claim on this point. However, in *DeGross* the court of appeals forbade the peremptory challenge of an Hispanic woman because of her race--not her gender. *DeGross*, 913 F.2d 1417 at 1425. And the United States Supreme Court in *Powers v. Ohio* only forbade unfettered peremptory challenges as to race; gender was neither raised nor discussed. *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). Simon's reliance upon *DeGross* and *Powers* is misplaced.

*Simon*, 633 So.2d. at 411.

¶3. This Court went on to affirm Simon's conviction and sentence, handing down its opinion on September 30, 1993, and denying Simon a rehearing on March 17, 1994. Simon then appealed this Court's ruling to the Supreme Court of the United States.

¶4. On April 19, 1994, the United States Supreme Court decided *J.E.B. v. Alabama, ex rel. T.B.*, 114 S.Ct. 1419 (1994). At issue in that case was "whether the Equal Protection Clause forbids intentional discrimination on the basis of gender, just as it prohibits discrimination on the basis of race." *Id.* at 1421. The Court decided that:

[T]he Equal Protection Clause prohibits discrimination in jury selection on the basis of gender, or on the assumption that an individual will be biased in a particular case for no reason other than the fact that the person happens to be a woman or happens to be a man. As with race, the "core guarantee of equal protection, ensuring citizens that their State will not discriminate . . ., would be meaningless were we to approve the exclusion of jurors on the basis of such assumptions, which arise solely from the jurors' [gender]." *Batson v. Kentucky*, 476 U.S. 79, 97-98, 106 S.Ct. 1712, 1723-1724.

*J.E.B.*, 114 S.Ct. at 1430.

¶5. On October 31, 1994, the United States Supreme Court decided Simon's appeal. *Simon v. Mississippi*, 115 S.Ct. 413 (1994), reads in pertinent part:

On petition for writ of certiorari to the Supreme Court of Mississippi. The motion of petitioner for leave to proceed in forma pauperis and the petition for writ of certiorari are granted. The judgment is vacated and the case is remanded to the Supreme Court of Mississippi for further consideration in light of *J.E.B. v. Alabama, ex rel. T.B.*, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).

¶6. On remand from the United States Supreme Court, the only issue before this Court is whether this case should be remanded to the circuit court for further proceedings on appellant's claim that the prosecutor engaged in gender discrimination in employing his peremptory challenges to eliminate a highly disproportionate number of females.

¶7. For the purposes of the current appeal, the significant portions of the trial court's ruling on this

issue are set forth below.

MR. WALLS [Defense Counsel]:

Your Honor, we do have a motion.

JUDGE PEARSON:

All right, sir.

MR. WALLS:

Comes the defendant, and moves the court to disallow the challenges of the State exercised for juror number 2, Steinwinder, on the basis that she's a woman.

JUDGE PEARSON:

Do you want to just make them one at a time or --

MR. WALLS:

Yes, I was going to go through them all.

JUDGE PEARSON:

All right. Let me mark them down then as you go.

MR. WALLS:

S-2 on juror number 11, Robert Neal Strickland, who is a black juror; S-3, Sherry Jackson, a black juror.

JUDGE PEARSON:

What's her number?

MR. WALLS:

Number 26. S-4, number 30, Tina Tidwell, who is a woman, S-5 --

JUDGE PEARSON:

Which one was that?

MR. WALLS:

Number 30.

JUDGE PEARSON:

Okay.

MR. WALLS:

S-5, number 31, Delores Dixon, who's a woman; S-6, number 34, Clara H. Holifield, who's a woman; S-7, 35, who is a woman. S-8, number 39 is a black male; S-9 is a woman and S -- strike that one, Your Honor. The basis is --

JUDGE PEARSON:

Is that all?

MR. WALLS:

That's all.

JUDGE PEARSON:

Go ahead.

MR. WALLS:

For those black jurors which were cited, we object on the basis of the decision of the Mississippi -- excuse me, U.S. Supreme Court in Batson versus Kentucky, and all of the Mississippi Supreme Court cases which -- that would docket and follow Batson. There was nothing about any of these jurors which indicated that they should have been stricken other than their race, and on the other jurors which I've mentioned were all -- all of the other ones were white women. That's also based on a line of cases which in various jurisdictions which have recognized the systematic striking with peremptory challenges of women as jurors. It's akin to a bachelor objection.

JUDGE PEARSON:

Cognizant of rules, correct?

MR. WALLS:

Yes, sir.

JUDGE PEARSON:

That would be really the 6th Amendment objections; isn't that right, Mr. Walls?

MR. WALLS:

Yes, sir.

JUDGE PEARSON:

I'm going to address first the objection under the Batson case which were to the two jurors or members of the panel who were black. Under the Batson case, which was a ruling under the 14th Amendment to the United States Constitution, and then I will address the challenges to the

women.

(T. 1261-1263)[(1)](#)

¶8. Judge Pearson conducted a ***Batson*** hearing concerning the two excluded black jury members at the conclusion of which the final jury was seated and sworn in. He then held the following dialogue with counsel for the State and for the Defense:

JUDGE PEARSON:

The court has one or two different things to take up, but the first thing I want to take up is the court failed to address one portion of the motion Mr. Walls made with regard to either a continuance or a change of venue, I think an objection to the jury on the basis that I believe six or eight of the -- I've forgotten how many, but a number of the jurors that were stricken by the state were white females; is that correct?

MR. WALLS:

Yes, sir.

JUDGE PEARSON:

And the court had alluded to the fact that, of course, these persons were not of the same race as the defendant, so this would not be a Batson challenge, and the only way that the court understands that the defense would be entitled to challenge these would be under the 6th Amendment which would be because by striking those eight jurors or whatever many there were, was it eight?

MR. WALLS:

Yes, sir.

JUDGE PEARSON:

That they would be -- the fair cross section of the community would not be represented on the jury. Of course, they do represent a cognizable group, and also, it's conceivable, and this court has stated this before, that even under the Batson ruling that persons who are excluded from the jury could be excluded in violation of the equal protection of the laws under the 14th Amendment because everyone has stated in that case, the Batson case, each person has a constitutional right to sit on a jury. The court feels that that is true of both the State witnesses or jurors, rather, as either challenged by the State or the defense, and in 6th Amendment cases that the court is aware of, and I have alluded to these a number of times, the case in California, the Wheeler case, the Sores case in Massachusetts, I've forgotten the names of the cases, but Florida, a number of other states as well as a number of federal jurisdictions recognize the right to sit on a jury and not to be challenged as a group because of your racial identity, whatever it might be. Of course, in those cases, they were decided the burden was equally on the defense as well as the State to justify those weaknesses, and this court has ruled on one case, and the Supreme Court and State of Mississippi have not ruled under the 6th Amendment on cases of

that sort. I frankly would hope that they would do so and apply it equally to both sides of the case in both criminal and civil cases, but so far, they have not seen fit to do so or maybe have not had an opportunity to do so because there hadn't been a case presented to them that would justify making that ruling, but at any rate, somewhere down the line, hopefully, that will be decided and whatever way it is decided this court will, of course, follow it. **But at this point, the court does not feel that that is something that needs to be addressed by this court affirmatively for the defense and on this case, either, for the State, so the court would deny the motion on that basis.**

**There's certainly no Batson violation here as far as the State is concerned, and I deny the challenge. The court will observe that there are a number of white women still on the jury. I don't know exactly how many, but I think, if anything, there are more white women on the jury than there are anything else, but there was certainly no systematic exclusion of white women any more -- certainly not as much as there were exclusions of white men from the jury by the defense, so I am ruling that the motion by the defense is denied**.

(T. 1274-1276) (emphasis added).

¶9. No further action was taken by the lower court concerning the peremptory challenges.

**LAW**

**I. WHETHER THIS CASE SHOULD BE REMANDED TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS ON APPELLANT'S CLAIM THAT THE PROSECUTOR ENGAGED IN GENDER DISCRIMINATION IN EMPLOYING HIS PEREMPTORY CHALLENGES TO ELIMINATE A HIGHLY DISPROPORTIONATE NUMBER OF FEMALES.**

¶10. *J.E.B. v. Alabama, ex rel. T.B.* provides the proper procedure for determining whether a prosecutor has improperly engaged in gender discrimination in using his peremptory challenges:

As with race-based Batson claims, **a party alleging gender discrimination must make a prima facie showing of intentional discrimination before the party exercising the challenge is required to explain the basis for the strike.** *Batson*, 476 U.S., at 97, 106 S.Ct., at 1723. When an explanation is required, it need not rise to the level of a "for cause" challenge; rather, it merely must be based on a juror characteristic other than gender, and the proffered explanation may not be pretextual. See *Hernandez v. New York*, 500 U.S. 352 (1991).

*J.E.B.*, 114 S.Ct. at (emphasis added).

¶11. *J.E.B.*, much like *Batson* before it, creates a case-by-case fact-specific test. At the trial below, counsel for the defendant timely objected to the prosecutor's use of seven of his nine peremptory challenges to strike women from the jury. From the excerpts above, Judge Pearson, operating without the benefit of *J.E.B. v. Alabama, ex rel. T.B.,* dismissed the defense's objections on two grounds. The first of these reasons is two-pronged: (1) *Batson* violations did not extend to gender; and (2) Simon had no standing to raise a challenge to the exclusion of women as he is a male. *Simon*,

633 So. 2d at 414 (Banks, J. dissenting). This is the ground on which we affirmed. Overlooked in the first opinion is the alternative second ground on which Judge Pearson denied Simon's objection, the lack of a *prima facie* inference of discrimination.

¶12. It is worthwhile to repeat the last portion of Judge Pearson's ruling:

> The court will observe that there are a number of white women still on the jury. I don't know exactly how many, but I think, if anything, there are more white women on the jury than there are anything else, but there was certainly no systematic exclusion of white women any more -- certainly not as much as there were exclusions of white men from the jury by the defense, so I am ruling that the motion by the defense is denied.

¶13. The facts on which Judge Pearson relied, i.e. the numbers of which gender were excused versus the numbers of the two sexes which were seated on the panel, is the type of analysis a trial court conducts in order to determine whether a prima facie inference of discrimination has been made. Thus, we find that this statement is an alternate basis on which Judge Pearson denied the defendant's motion.

¶14. The Supreme Court stated in *Batson* that as "the trial judge's finding in the context under consideration here largely will turn on evaluation of credibility, a reviewing court should ordinarily give those findings great deference." *Batson*, 476 U.S. at 98 n.21. In *Hernandez v. New York*, the Supreme Court held that the treatment of intent [of the striking party] is a purely factual issue subject to the deferential "clearly erroneous" standard employed in other equal protection cases. *Hernandez v. New York*, 500 U.S. 351, 367 (1991). Since any finding concerning whether a prima facie requirement has been met involves questions of fact and credibility, the clearly erroneous standard of review is appropriate.

¶15. "So long as the trial court applies the correct legal standard, we will not overturn a finding of fact made by a trial judge unless it is clearly erroneous." *Chisolm v. State*, 529 So. 2d 630, 633 (1988), *quoting Neal v. State*, 451 So.2d 743, 753 (Miss. 1984); *see also Lockett v. State*, 517 So. 2d 1346, 1352 (Miss. 1987).

¶16. In the present case, the prosecution used nine peremptory strikes. Seven of these were used against women. This single fact, viewed in isolation, would tend to prove the defendant met his *prima facie* burden. However, other salient facts were present before the trial judge. Sixty-eight people were qualified as jurors and placed on the venire. Fifty-four percent of the venire members were women. The prosecution passed on forty-five people in seating the jury, not including alternates. Fifty-one percent of these venire members were women. The fact that more women were seated toward the end of the draw shows no animus on behalf of the prosecution. Challenges were exercised lowering the percentage of women passed upon by the State to 45.5% (fifteen women among thirty-three venire members). The prosecution struck seven of the fifteen women and allowed eight to be seated. In other terms, the State struck forty-seven percent of the women it had the opportunity to pass upon. The prosecution did not use three of its peremptory strikes. Finally, as the trial judge noted, there were more women on the jury than anything else. In fact, eight of the twelve jurors were women. All three alternates were women. The only strike the prosecution used when selecting alternate jury members was against a male. These facts tend to dispel any inference of gender based discrimination.

¶17. Returning to our standard of review, we do not weigh the factors presented to the trial court anew, but simply determine whether the trial court clearly erred in ruling that a *prima facie* inference of gender based discrimination was not made. Necessarily this implies that discretion is vested in the trial court. On review, we may not disturb those discretionary findings unless the facts are such that this Court, reading a cold record, can state the trial court was clearly erroneous. *See, Hernandez*, 500 U.S. at 367; *Batson*, 476 U.S. at 98 n.21; *Chisolm v. State*, 529 So. 2d at 633. Here we cannot. Where the percentage of female venire members struck was so nearly equivalent to the percentage of women in the venire upon which the State passed with three peremptory strikes unused, and the ultimate composition of the jury produced a percentage of women that was higher than the percentage of women on the original venire, we see no clear error. The law commands that we respect the trial court's finding.

¶18. Having reconsidered our prior ruling in light of the principles espoused in *J.E.B. v. Alabama,* we hold that the trial court was not clearly erroneous in ruling the defendant did not make out a *prima facie* case of gender discrimination. We, therefore, affirm the judgment and sentence of Robert Simon.

**¶19. CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT AFFIRMED; CONVICTION OF SEXUAL BATTERY AND SENTENCE OF THIRTY YEARS AFFIRMED; CONVICTION OF KIDNAPING AND SENTENCE OF THIRTY YEARS AFFIRMED. SENTENCES TO RUN CONSECUTIVELY.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, McRAE, ROBERTS AND SMITH, JJ., CONCUR.**

1. These cites are from the trial transcript of the record sent to this Court for the initial *Simon v. State* appeal, case number 90-KA-00904.