764 So.2d 448 (2000)
Willie FARMER a/k/a Willie Lee Farmer, Jr., Appellant,
v.
STATE of Mississippi, Appellee.
No. 1998-KA-01671-COA.
Court of Appeals of Mississippi.
February 22, 2000.
Rehearing Denied May 23, 2000.
Certiorari Denied August 17, 2000.
*450 Calvin D. Taylor, Pascagoula, Attorney for Appellant.
Office of the Attorney General by Pat S. Flynn, Attorney for Appellee.
BEFORE KING, P.J., BRIDGES, AND MOORE, JJ.
MOORE, J., for the Court:
¶ 1. Appellant Willie Lee Farmer was indicted by a Jackson County grand jury for touching of a child for lustful purposes. Following a trial, the jury found Farmer guilty as charged. The circuit court sentenced Farmer as an habitual offender to fifteen years imprisonment in the custody and control of the Mississippi Department of Corrections, without benefit of probation or parole, with five years of the sentence suspended and five years of supervised probation. Aggrieved, Farmer raises the following issues on appeal
I. IT WAS ERROR FOR THE COURT TO DENY THE APPELLANT'S CHALLENGES FOR CAUSE TO ALL THE VENIREMEN WHO ON VOIR DIRE STATED THEY HAD BEEN A VICTIM OF A SEXUAL ACT, OR WERE A RELATIVE OF A PERSON WHO HAD BEEN A VICTIM OF A SEXUAL ACT;
II. IT WAS ERROR FOR THE COURT TO ALLOW THE STATE'S PEREMPTORY CHALLENGES OF JURORS O.D. ALFORD, JR. AND MARCELLA WILLIAMS FOR ALLEGED RACIALLY NEUTRAL REASONS;
III. THE COURT IN FAILING TO SUSTAIN NUMEROUS OBJECTIONS BY THE APPELLANT DURING THE COURSE OF THE TRIAL, EFFECTIVELY DENIED THE APPELLANT FROM RECEIVING A FAIR TRIAL;
IV. IT WAS ERROR FOR THE COURT TO DENY THE APPELLANT'S MOTIONS FOR A DIRECTED VERDICT AT THE CLOSE OF THE STATE'S CASE-IN-CHIEF AND AT THE CONCLUSION OF THE ENTIRE CASE RESULTING IN A VERDICT AGAINST THE OVERWHELMING WEIGHT OF CREDIBLE EVIDENCE ADDUCED AT TRIAL, AND CONTRARY TO THE LAW OF THIS STATE; AND
V. THE CULMINATION OF ERROR IN THIS TRIAL REQUIRES REVERSAL.

FACTS
¶ 2. On November 21, 1995, during her Thanksgiving break from school, eight-year-old *451 C.B. spent the night with her paternal grandmother, affectionately known as "Grandma Munch." C.B. and her three siblings lived with their mother Sharita and their maternal grandmother Vickie on the same street as Grandma Munch. Sharita was separated from her children's father, Clarence, Grandma Munch's adopted son and nephew by blood. Clarence resided with Grandma Munch. Appellant Willie Lee Farmer was temporarily residing with his aunt, Grandma Munch, and his cousin Clarence on the night in question.
¶ 3. On the night of November 21, C.B. and her three siblings were put to bed on a sofa-bed in Grandma Munch's living room. During the night, Farmer lifted C.B. from the sofa bed and carried her to the bedroom not occupied by Grandma Munch. At some point, C.B. noticed that Farmer, who had lowered her into his bed, was naked. Farmer crawled into bed with C.B. then touched her in her vaginal area and on her buttocks. C.B. tried to get away from Farmer, but he held her down and threatened to kill her if she told anyone about the molestation. Farmer hit C.B. in the back when she attempted to flee his abuse. C.B. told her sister and brother about Farmer's molestation of her.
¶ 4. When C.B. returned to school after the Thanksgiving break, she attended a special program entitled "good touch, bad touch." When the program concluded, C.B. informed her teacher that she had been molested by her maternal grandfather, before he died, and by Farmer. The teacher took C.B. to visit Pamela Rogers, the school counselor. C.B. described Farmer's actions to Rogers. Rogers then contacted C.B.'s mother. Both the Ocean Springs Police Department and the Mississippi Department of Human Services (MDHS) were notified, and C.B. gave statements to Officer Mary Brown and to MDHS counselor Edward Brennan. In her statements to Rogers, Brennan, and Brown, C.B. reported that Farmer picked her up out of bed and took her to his bed, that Farmer touched her in her vaginal area and buttocks, and that Farmer threatened to kill her if she reported him. C.B. told Brennan and Brown that Farmer had gotten on top of her, and she told Brennan that Farmer had gone up and down on her. She also told Brennan and Brown that Farmer kissed her lips and neck and hit her on the back. C.B. told Brennan that she told her brother and sister about the incident, and Brennan testified that he confirmed this with her brother and sister.
¶ 5. Rogers, Brennan, and Brown all testified that C.B. was frightened and nervous and that she cried when giving her statements. She also expressed fear that Farmer would hurt her. Brennan testified that C.B. blamed herself for Farmer's heinous acts. Rogers testified that C.B. covered her mouth and whispered when she recounted the story of the molestation and that she hyperventilated. Sharita testified that her daughter had been having nightmares since this incident and had undergone psychiatric counseling. When Sharita found out that Farmer had molested her daughter, she went after him with a gun. She kicked down the door of Grandma Munch's house while Farmer attempted to escape through the back door. Sharita admitted that she jumped Farmer and that they fought on the ground until her sister broke them up.

LAW AND ANALYSIS

I. WAS IT ERROR FOR THE COURT TO DENY THE APPELLANT'S CHALLENGES FOR CAUSE TO ALL THE VENIREMEN WHO ON VOIR DIRE STATED THEY HAD BEEN A VICTIM OF A SEXUAL ACT, OR WERE A RELATIVE OF A PERSON WHO HAD BEEN A VICTIM OF A SEXUAL ACT?
¶ 6. Fourteen of the seventy-four members of the venire either were victims of some type of sexual abuse, or had family members who were victims of sexual *452 abuse. The trial judge, sua sponte, excused for cause those who expressed their inability to be fair and impartial. The trial court refused to strike for cause eight of those who had stated that they could be fair and impartial.
¶ 7. In the case sub judice, the parties selected the petit jury off the record then went back on the record to read the list of those selected as jurors. The record does not reveal whether Farmer exercised any of his peremptory challenges. The record also does not reveal whether any of the eight venire members who were challenged for cause were actually selected to serve on the petit jury. A comparison of the names of the venire members who were challenged for cause and those actually selected reveals that five of the eight challenged for cause were not selected for the petit jury. It is not clear whether the remaining three challenged venire members were selected to serve on the jury because these venire members, denoted as numbers fifteen, forty-one, and fifty-eight in the record, were not clearly named.
¶ 8. Prerequisite to a claim of trial court error for failing to grant a challenge for cause Farmer must show "that he had exhausted all of his peremptory challenges and that the incompetent juror was forced upon him by the trial court's erroneous ruling." Chisolm v. State, 529 So.2d 635, 639 (Miss.1988). See also Martin v. State, 592 So.2d 987, 988 (Miss.1991); Hansen v. State, 592 So.2d 114, 129 (Miss.1991). A trial court will not be held in error for refusing a challenge for cause as long as there are unused peremptory challenges. Martin, 592 So.2d at 988. Farmer has not met the threshold burden set forth in Chisolm. He has neither shown that he exhausted all of his peremptory challenges nor complained that the challenged jurors were forced upon him by the trial court's ruling. The trial court may not, therefore, be held in error for its refusal to excuse the challenged venire members for cause.

II. WAS IT ERROR FOR THE COURT TO ALLOW THE STATE'S PEREMPTORY CHALLENGES OF JURORS O.D. ALFORD, JR. AND MARCELLA WILLIAMS FOR ALLEGED RACIALLY NEUTRAL REASONS?
¶ 9. Farmer, an African-American, complains that the State's exercise of two peremptory challenges to exclude two out of three African-Americans from the first jury panel was racially motivated and invalid under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). He further alleges the trial court did not allow a full examination of the Batson issue regarding these two challenged venire members. Farmer's Batson challenge concerns venire members O.D. Alford and Marcella Williams. The prosecutor peremptorily challenged Alford because he did not complete his jury questionnaire, and he failed to respond to a voir dire question regarding the presumption of innocence. The prosecutor peremptorily challenged Williams because she looked familiar to the prosecutor and because she failed to respond to voir dire questions.
¶ 10. To successfully assert a Batson claim, the following procedure must ensue:
First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.
Berry v. State, 728 So.2d 568 (¶ 11) (Miss. 1999) (citing Hernandez v. New York, 500 U.S. 352, 358-59, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). "When the prosecution gives race-neutral reasons for its peremptory strikes, the sufficiency of the defendant's prima facie case becomes moot." Manning v. State, 735 So.2d 323 (¶ 28) (1999) (citing Hernandez, 500 U.S. at 352, *453 111 S.Ct. 1859). We assume Farmer made the requisite prima facie showing because the prosecution articulated its racially neutral reasons.
¶ 11. Farmer argues for the first time on appeal that the prosecution's reasons for striking Alford and Williams are purely pretextual. He did not raise pretext to the trial court either during the Batson examination or in his motion for JNOV or alternatively for new trial. "It is incumbent upon a defendant claiming that proffered reasons are pretextual to raise the argument before the trial court. The failure to do so constitutes waiver." Mack v. State, 650 So.2d 1289, 1297 (Miss.1994) (emphasis added). See also Manning, 735 So.2d at 323 (¶ 30). Since Farmer did not raise pretext at the trial level, he has waived his right to argue such for the first time on appeal.
¶ 12. Even had Farmer preserved the pretext issue, we find the trial court did not err in allowing the prosecution's peremptory strikes of Alford and Williams. The trial judge has the sole discretion to determine whether the prosecution's exercise of peremptory challenges was racially motivated under its articulated reasons. Collins v. State, 691 So.2d 918, 926 (Miss.1997) (citing Lockett v. State, 517 So.2d 1346, 1350 (Miss.1987)). "Moreover `a trial judge's factual findings relative to a prosecutor's use of peremptory challenges on minority persons are to be accorded great deference and will not be reversed unless they appear to be clearly erroneous or against the overwhelming weight of the evidence.'" Id.
¶ 13. Once the prosecutor comes forward with race-neutral reasons, Farmer has the opportunity to rebut the reasons. Chisolm, 529 So.2d at 638. "If the defendant makes no rebuttal, the trial judge may base his decision solely on the reasons given by the State." Manning, 735 So.2d at 323 (¶ 29) (citing Bush v. State, 585 So.2d 1262, 1268 (Miss.1991)). The prosecution's recitation of race-neutral reasons is not required to rise to the level of justification as required for a challenge for cause. Collins, 691 So.2d at 926 (citing Batson, 476 U.S. at 97, 106 S.Ct. 1712); Lockett v. State, 517 So.2d 1346, 1352 (Miss.1987). Farmer did not attempt to rebut the prosecution's proffered race-neutral reasons despite being given the opportunity to do so by the trial court. Without the benefit of rebuttal from Farmer, the trial court had only the prosecution's articulated reasons for its peremptory strikes of Alford and Williams. Our function is to determine whether the trial court's acceptance of the State's reasons was clearly erroneous or against the overwhelming weight of the evidence.
¶ 14. Alford was struck for his failure to complete a jury questionnaire and for his failure to respond during voir dire when the venire was questioned regarding its understanding of the presumption of Farmer's innocence. The offending questionnaire does not appear in the record, and the prosecutor did not question Alford to determine the reasons for his incomplete questionnaire or attempt to ascertain the answers to the incomplete portions of the questionnaire during voir dire. We hesitate to recognize the prosecution's articulation of the incomplete questionnaire as a race neutral reason under such circumstances. The prosecution's second reason for striking Alford is a recognizable race-neutral reason. The prosecutor specifically questioned the venire about its understanding of the presumption of innocence: Alford failed to respond or otherwise indicate that he understood the presumption. Inattentiveness during voir dire is a race-neutral reason for exercise of a peremptory challenge. Lockett, 517 So.2d at 1357 (appendix I). Whether Alford's failure to respond to a question regarding the presumption of innocence was born of inattentiveness or any other reason, we find no error for the trial court's factual finding that Farmer's lack of responsiveness to this question was a race-neutral reason for the peremptory challenge.
*454 ¶ 15. Williams was struck because the prosecutor recognized her from somewhere and because she did not respond to voir dire questions. The record does not indicate to which questions Williams failed to respond, and the prosecutor did not clarify this during the Batson colloquy; therefore, this reason is arguably pretextual. The prosecution's alternative reason for striking Williams is race-neutral. The prosecutor stated that she knew Williams from somewhere. The prosecutor surmised that she could have come into contact with Williams during her, the prosecutor's, stint as a public defender. The prosecutor specifically asked Williams whether they knew each other, and Williams responded negatively. During the Batson colloquy, the prosecutor stated as an officer of the court that she knew Williams from somewhere but could not specify where. Keeping in mind that the trial judge, being acquainted with the attorneys in her court, was in a better position to adjudge the sincerity of the prosecutor's avowal that she knew Williams, we find that the trial court's acceptance of this reason as race-neutral was not clearly erroneous or against the overwhelming weight of the evidence. This is especially true in light of Farmer's failure to offer rebuttal or argue pretext at the trial level.
¶ 16. Farmer's complaint that the trial court did not allow him a full opportunity to examine the Batson issue at trial is not supported by the record. In fact, the record shows that after the State gave its race-neutral reasons, the trial court clearly invited further Batson examination by asking Farmer: "Do you have anything else?" Farmer's counsel responded: "We do not, Judge." This assignment of error is without merit.

III. DID THE COURT, IN FAILING TO SUSTAIN NUMEROUS OBJECTIONS BY THE APPELLANT DURING THE COURSE OF THE TRIAL, EFFECTIVELY DENY THE APPELLANT FROM RECEIVING A FAIR TRIAL?
¶ 17. Farmer claims that he raised numerous objections during Sharita's testimony pertaining to relevance and bolstering, and that the trial court limited him from exploring "just how concerned a mother Sharita [] is to [C.B.] and her siblings." Farmer also claims that the trial court limited his impeachment of C.B. and of Sharita which denied his "ability to cut through the myriad of underlying issues and justifications, particularly in the mind of Sharita."
¶ 18. Farmer provides record cites exhibiting two instances where the trial court overruled two of his objections during Sharita's testimony. In the first instance, Farmer objected to the relevance of the State's asking Sharita how she had met Farmer. Given that a significant portion of Farmer's case is devoted to exploring Sharita's alleged animosity against him as a possible motive for C.B.'s accusation, the circumstances under which Farmer and Sharita met are highly relevant. Farmer also objected to relevancy when the State asked Sharita how the molestation affected her daughter. The supreme court has held that the mental state of a victim of a sex crime is corroborating evidence, Collier v. State, 711 So.2d 458, 462 (Miss.1998); therefore, testimony regarding C.B.'s mental state is relevant. The trial court did not err in overruling these objections.
¶ 19. We can find no evidence to support Farmer's complaint that the trial court limited his impeachment of Sharita. In fact, the record reveals that the trial court gave Farmer wide latitude in his cross-examination of Sharita and that he was allowed to fully explore the alleged animosity between Sharita and Farmer. Farmer cited page 334 of the trial transcript as an example of the trial court's limiting his questioning regarding Sharita's status as a concerned mother. We have reviewed the entire transcript, including page 334, and have discovered that the trial court fully allowed this line of questioning, *455 despite its questionable relevance in a fondling trial against Farmer. This complaint is also without merit.
¶ 20. Farmer additionally claims that there were wide discrepancies in the statements C.B. gave to Officer Brown, Edward Brennan, and Pamela Rogers, and that to rehabilitate C.B.'s testimony, "the State was literally reading [her] statements back to her." Farmer is aggrieved that the trial court allowed rehabilitation of C.B.'s testimony, over his objection, by allowing the State to review portions of C.B.'s statement to Officer Brown. What Farmer fails to mention is that during his cross-examination of C.B., he highlighted portions of C.B.'s statement to Officer Brown which were initially confusing, but did not read later portions of the same statement which clarified the confusion. In reviewing the statement with C.B. during redirect examination, the prosecutor gave C.B. the opportunity to put her statement in context by reading the portions that would clarify the confusion. "The scope of redirect examination, while largely within the discretion of the trial court, is limited to matters brought out during cross-examination." Blue v. State, 674 So.2d 1184, 1212 (Miss.1996). The State confined its questions to matters Farmer raised in his cross-examination. This was proper redirect and the trial court did not abuse its discretion in allowing this testimony.

IV. WAS IT ERROR FOR THE COURT TO DENY THE APPELLANT'S MOTIONS FOR A DIRECTED VERDICT AT THE CLOSE OF THE STATE'S CASE-IN-CHIEF AND AT THE CONCLUSION OF THE ENTIRE CASE RESULTING IN A VERDICT AGAINST THE OVERWHELMING WEIGHT OF CREDIBLE EVIDENCE ADDUCED AT TRIAL, AND CONTRARY TO THE LAW OF THIS STATE?
¶ 21. In articulating the above assignment of error, Farmer improperly combines two distinct legal arguments into one. One argument challenges the legal sufficiency of the evidence and the other charges that the verdict was against the overwhelming weight of the evidence. Whether the evidence is legally sufficient is an argument appropriately raised in a directed verdict motion or a JNOV. McClain v. State, 625 So.2d 774, 781 (Miss. 1993). In determining whether the trial court erred in failing to grant a directed verdict or JNOV, all credible evidence consistent with Farmer's guilt must be accepted as true and the State must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Id. "We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." Wetz v. State, 503 So.2d 803, 808 (Miss.1987).
¶ 22. An argument that the verdict was against the overwhelming weight of the evidence is challenged in a motion for new trial. The decision to grant or deny such motion is discretionary with the trial court. McClain, 625 So.2d at 781. The trial court should grant a new trial motion only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice. Wetz, 503 So.2d at 812. In reviewing the trial court's denial of a new trial motion, we must accept as true all evidence favorable to the State, and we may not reverse absent an abuse of discretion. McClain, 625 So.2d at 781.
¶ 23. Farmer claims that there were serious gaps in the testimony of Officer Brown, Brennan, and Rogers which suggest reasonable doubt. We have reviewed the testimony in question and find the testimony to be credible and consistent. Brown, Brennan, and Rogers all testified C.B. reported that Farmer picked her up from the bed in which she was *456 sleeping, touched her butt and vaginal area, and threatened to kill her if she reported the incident. These three witnesses testified that C.B. was frightened and anxious when recounting the incident. Brown and Brennan testified that C.B. reported that Farmer got on top of her, kissed her lips and neck, and hit her on the back. Brennan testified that C.B. reported that Farmer inserted his fingers into her buttocks and vagina and went up and down on her. Brown testified that C.B. reported that Farmer hit her in the back with a board. Giving the State the benefit of all favorable inferences that may be drawn from this testimony, reasonable and fair-minded jurors could find Farmer guilty of each element of the crime for which he was charged; therefore, the evidence was legally sufficient to survive Farmer's directed verdict and JNOV motions.
¶ 24. Further, the verdict was not against the overwhelming weight of the evidence. The supposed "gaps" in the testimony of Brown, Brennan, and Rogers do not necessarily give rise to reasonable doubt as Farmer argues. "[W]here there is conflicting testimony, the jury is the judge of the credibility of the witnesses." Wetz, 503 So.2d at 812. Accepting as true all evidence favorable to the State, as we are bound to do under the above-stated standard of review, we find that the trial court did not abuse its discretion in overruling Farmer's new trial motion.
¶ 25. We note: "[T]he unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence, especially if the conduct of the victim is consistent with the conduct of one who has been victimized by a sex crime." Collier v. State, 711 So.2d 458, 462 (Miss.1998). C.B.'s word alone supports the verdicteven if the testimony of Brown, Brennan, and Rogers was somehow defectivebecause Farmer offers no credible evidence to discredit or contradict C.B., especially since C.B.'s nightmares and need for psychiatric counseling is consistent conduct for one who has been sexually victimized.
¶ 26. Included in this assignment of error is Farmer's suggestion that the absence of other investigators who did not testify at trial somehow contributed to the guilty verdict. He argues: "[U]nless this case is remanded, and all involved are brought to the Court, we will never know the true outcome of this alleged occurrence." Farmer cited no portion of the record in which he complained about the absence of these investigators to the trial court, nor did he complain about the absence of these investigators in his motion for JNOV or new trial. In short, he did not preserve this as a ground for appeal, and we are procedurally barred from reviewing this issue. Fleming v. State, 604 So.2d 280, 302 (Miss.1992). Nevertheless, this ground would fail since C.B.'s uncontradicted testimony alone supports his conviction. This assignment of error is without merit.

V. DID THE CULMINATION OF ERROR IN THIS TRIAL REQUIRE REVERSAL?
¶ 27. "Where there is `no reversible error in any part, ... there is no reversible error to the whole.'" Wilburn v. State, 608 So.2d 702, 705 (Miss.1992) (quoting McFee v. State, 511 So.2d 130, 136 (Miss. 1987)). Having found that the trial court committed no errors, this assignment of error is without merit.
¶ 28. THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT OF CONVICTION OF TOUCHING A CHILD FOR LUSTFUL PURPOSES AND SENTENCE OF FIFTEEN YEARS IMPRISONMENT AS AN HABITUAL OFFENDER, WITH FIVE YEARS SUSPENDED UNDER SUPERVISED PROBATION, TO BE SERVED IN THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS ARE ASSESSED TO JACKSON COUNTY.
*457 McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.