KING, P.J.,
for the Court.
¶ 1. A Clay County Circuit Court jury convicted Robert Lenoir of murder. He was subsequently sentenced to a life term in the custody of the Mississippi Department of Corrections. This appeal follows the denial of his post-trial motions. Lenoir alleges error in the trial court’s denial of his peremptory strikes and claims that he received ineffective assistance of counsel. Finding no reversible error, this Court affirms his conviction and sentence.
FACTS
¶ 2. The trial testimony indicates that Robert Lenoir killed his wife either intentionally in a fit of rage or accidentally in self-defense. The nine year old son of the victim testified that he and his younger sister had been picked up from school by their mother and Lenoir, who was the children’s stepfather. After the family arrived home and exited the car Lenoir and the victim became engaged in very loud and heated argument. Lenoir went into the house, while the victim stopped to assist the little girl with an article of clothing that appeared to need mending. Unable to mend the article, the little girl was sent into the house to change her clothing. According to the son, the victim, who entered the house a short time later, was immediately attacked and stabbed by Lenoir as she struggled to escape.
¶ 3. The son, had remained outside the house, but testified that he saw the attack *705 through the screen door, and ran to a nearby neighbor’s home to phoné for help.
¶ 4. The police arrived within minutes of the phone call and found Lenoir standing in the doorway of the home covered in blood. The victim was on the floor in a sitting position leaning against a coffee table. She had two wounds to her throat and was bleeding profusely. She was pronounced dead a short time later at a nearby hospital.
¶ 5. At trial, Lenoir testified that the victim came at him with the knife and was accidentally stabbed as he struggled with her for possession of the knife.
ANALYSIS OF ISSUES
I. Did the lower court commit reversible error in refusing to grant Lenoir’s peremptory strikes?
¶ 6. Lenoir used all eight of his peremptory challenges against Caucasian members of the jury. The State challenged the strikes and as a result the trial judge required the defense to provide race-neutral reasons for the strikes. The reasons given for three of the strikes were held to be race-neutral. Five were found to be without a race-neutral basis. Lenoir argues in this appeal that all of the reasons he provided were race-neutral and, therefore, all of the strikes should have been allowed.
¶ 7. The argument regarding the refused strikes was as follows:
THE COURT: He states as his race neutral reason for the exercise of D-3 is that that is a medical profession and that they probably would be sympathetic, the same as number 1. The Court doesn’t find that at all and that’s not a valid race neutral reason for the exercise of D-3. D-3 is disallowed.
^ ‡ í*í % % ifc
DEFENSE: D-4 is the — is the teacher, and I didn’t question her as to whether or not this person taught — whether
. or not they taught any of these children, but that is the reason that I think a teacher would be more sympathetic with — with the State’s case because the mother did leave children of a tender age.
PROSECUTOR: Your Honor, we don’t know if she’s a college teacher. We don’t know what kind of teacher she is.
THE COURT: The Court finds that that is not a race neutral reason and disallows D-4.
* ❖ * * * *
THE COURT: State your race neutral reason for the exercise of peremptory challenge D-6, please.
DEFENSE: I think she’s the lady who seemed not be been paying very much attention.
THE COURT: Fooled me.
DEFENSE: Inattentive.
THE COURT: I did not notice that.
DEFENSE: I — I counted them down by rows. I was watching her.
PROSECUTOR: Your honor, I was watching while he was questioning them. I found that she seemed to be very attentive.
THE COURT: I didn’t see any — any failure to pay attention by Juror Number 17.
DEFENSE: That’s the impression she gave me, your Honor. I watched them.
THE COURT: Very well. The Court finds that that is insufficient and would disallow the exercise of D-6. The next one is D-7, 22. State your race neutral reason for the exercise of
*706 D-7, please. I suspect that means Buick instead of Brick.
DEFENSE: I don’t think that a salesman would be attentive, concerned about his business.
THE COURT: D-7 is disallowed. That is not a race neutral reason to be articulated in the record. The next one is D-8.
DEFENSE: Where is D-8?
THE COURT: Number 25, Juanita Watson.
DEFENSE: She works in medicine and I failed to ask whether or not she had done any — had she done any work on this particular occasion on either — either the defendant or the deceased and I think she’d be partiality and be — would be a partiality juror with the jury.
THE COURT: The Court directly asked the jurors if they knew anything about the case and that is not a race neutral reason. D-8 is disallowed.
* * * * * *
THE COURT: That’s five that the defendant has failed to state race neutral reasons after the Court’s found the exercise of all eight peremptory challenges so far were against members of the Caucasian race.
¶ 8. Lenoir argues that the holding in Brown ex rel. Webb v. Blackwood, 697 So.2d 763, 773-74 (Miss.1997), allows for the striking of a venireman out of concern for how his profession might affect his perception of the case, and thus, validates his race-neutral explanations for four of the five strikes that were disallowed. He also points out that in Farmer v. State, 764 So.2d 448 (Miss.Ct.App.2000), this Court allowed peremptory strikes of inattentive jurors and jurors who failed to make eye contact, therefore, his fifth strike should also have been allowed.
¶ 9. The State counters that while on their face Lenoir’s stated reasons for the strikes appear to be race-neutral, the trial court observed the whole process and made its decision based on the totality of the circumstances, therefore, on the basis of the holding in Henley v. State, 729 So.2d 232, 241 (¶ 41) (Miss.1998), the trial judge’s decision should be upheld. This Court agrees.
¶ 10. A review of the record before this Court indicates that the State, consistent with Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) established a prima facie case of racial discrimination. The establishment of the prima facie case, then placed upon Lenoir the burden of offering nonpretextual race-neutral reasons for the exercise of his peremptory challenges.
¶ 11. Lenoir offered facially race-neutral reasons for the exercise of his peremptory strikes. Of the eight reasons given by Lenoir, the trial court found three of these to be acceptable as race-neutral and found five to be unacceptable.
¶ 12. The five reasons not accepted by the trial court, while facially race-neutral, were among the type of reasons most often used as a pretext for discrimination. Whether the pretext is by the State or the defendant, it is equally offensive to the constitution.
¶ 13. The trial court listened carefully to the defendant’s reasons, consulted his notes and his recollection, and found defendant’s reasons to be pre-textual.
¶ 14. This Court is unable to state that such a finding is clear error, and accordingly, it affirms on this issue.
II. Did Lenoir receive ineffective assistance of counsel?
*707 ¶ 15. It is Lenoir’s contention that his counsel’s decision to object to the admission of photographs of the victim on the ground that the pictures contained “other instrumentalities, that is, scissors, surgical instruments, pointing to the wound,” rather than on the ground that they were graphic and gruesome in nature and that their probative value was outweighed by their prejudice, made counsel deficient. He cites no case authority nor reasoned argument for this allegation.
¶ 16. Lenoir lists other claimed acts of ineffective assistance based on failure to object to certain statements as hearsay and failure to move to suppress the admission of a tape-recorded statement that he gave to the police, but once again he fails to support these charges with any reasoned argument or case authority.
¶ 17. The standard of review that this Court applies in determining whether counsel was ineffective was enunciated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and was adopted by the Mississippi Supreme Court in Stringer v. State, 454 So.2d 468 (Miss.1984). In order to meet the requirements of that standard, an appellant must prove that prejudice resulted from a deficiency in counsel’s performance. Earley v. State, 595 So.2d 430, 433-434 (Miss.1992). Any such alleged deficiencies must be presented with specificity and detail. Perkins v. State, 487 So.2d 791, 793 (Miss.1986). Our state appellate courts recognize the strong presumption that counsel’s decisions fall within the realm of sound trial strategy. Hall v. State, 735 So.2d 1124 (¶ 6) (Miss.Ct.App.1999). Lenoir fails to overcome that presumption and therefore fails to show deficient performance by counsel.
¶ 18. Furthermore, claims of deficiency in attorney performance are subject to a general requirement that the appellant affirmatively prove prejudice. Strickland, 466 U.S. at 693, 104 S.Ct. 2052. Lenoir fails to even allege prejudice. Having failed to meet either prong of the Strickland test, we find that there is no merit to the ineffective assistance of counsel claim raised by Lenoir.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF CLAY COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO CLAY COUNTY.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.